1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREENBERG TRAURIG, LLP
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

Attorneys for Defendant
Greenlight Financial Technology, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN WRIGHT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GREENLIGHT FINANCIAL TECHNOLOGY, INC.,<br><br>Defendant. | CASE NO. 3:22-cv-02025-LL-NLS<br>Assigned to Hon. Linda Lopez<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(2), 12(b)(3) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declaration of Ashley Noto; Request for Judicial Notice; Proposed Order]<br><br>Action Filed: Dec. 20, 2022<br><br>**\*\*Briefing Schedule Set By Court Order, ECF No. 8\*\***<br><br>**PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |

DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS COMPLAINT

## NOTICE OF MOTION AND MOTION TO DISMISS:

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to the briefing schedule set by the Court in its February 9, 2023 Order, ECF No. 8, Defendant Greenlight Financial Technology, Inc. ("Greenlight") will and hereby does respectfully move for an order dismissing Plaintiff Joan Wright's ("Plaintiff") Class Action Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of an Article III injury in fact, 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for improper venue, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

This motion is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities in support thereof, the concurrently filed Declaration of Ashley Noto, the concurrently filed Request for Judicial Notice, and all pleadings and papers on file in this action, and such other written or oral argument as may be properly presented to the Court at the hearing.

This motion is made following the conference of counsel that took place on February 2, 2023.

Respectfully submitted,

DATED:  February 20, 2023          GREENBERG TRAURIG, LLP


By    /s/ Rebekah S. Guyon
     Rebekah S. Guyon

     Attorneys for Defendant
     Greenlight Financial Technology, Inc.

1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND.................................................................................3

    A.      Greenlight Is A Delaware Corporation, Headquartered In Atlanta,
        That Does Not Target California With Its Services.......................................3

    B.      Greenlight's Disclosures Regarding Its Collection Of Website
        Activity .......................................................................................................4

    C.      Plaintiff's Claims Arising From Greenlight's Use Of Session Replay ..........6

III.    THE COURT LACKS PERSONAL JURISDICTION OVER
        GREENLIGHT ......................................................................................................7

    A.      Standards For Motions To Dismiss Pursuant To Rule 12(b)(2) ....................7

    B.      Greenlight Is Not Subject To Specific Jurisdiction In California...................8

IV.     VENUE IS IMPROPER .......................................................................................12

    A.      Standards For Motions To Dismiss Pursuant To Rule 12(b)(3) ..................12

    B.      The Court Should Dismiss Plaintiff's Claims For Improper Venue.............12

V.      PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT ........14

    A.      Standards For Motions To Dismiss Pursuant To Rule 12(b)(1) ..................14

    B.      Constitutional Requirements For Standing ..................................................14

    C.      Plaintiff Has Not Alleged A Concrete Harm ..............................................15

    D.      Plaintiff Cannot Establish A Concrete Harm...............................................17

VI.     PLAINTIFF HAS NOT STATED A PLAUSIBLE CLAIM ...............................19

    A.      Standards For Motions To Dismiss Pursuant To Rule 12(b)(6) ..................19

    B.      Plaintiff Does Not Plausibly Allege An "Interception." .............................20

    C.      Plaintiff Has Not Alleged That Greenlight Acquired Any Contents. ...........21

    D.      Greenlight's Consent Is A Complete Bar To Plaintiff's Wiretap Act
        Claim. .........................................................................................................22

    E.      CIPA § 631(a) Does Not Apply To A Party To The Communication..........22

    F.      The First Clause of § 631(a) Does Not Apply To Internet
        Communications...........................................................................................23

    G.      Plaintiff's Consent Bars Her Claims ...........................................................23

i

VII.    CONCLUSION.................................................................................25

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AMA Multimedia, LLC v. Wanat,*
   970 F.3d 1201 (9th Cir. 2020) ...............................................................1, 7, 9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..............................................................................19, 20

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)....................................................................................19

*Bogart, LLC v. Corinthian, Inc.,*
   No. CV1107665GAFPLAX, 2012 WL 13009154 (C.D. Cal. May 3, 2012)..............13

*Brodsky v. Apple Inc.,*
   445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................2, 21

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)......................................................................................9

*Caces-Tiamson v. Equifax,*
   No. 20-cv-00387-EMC, 2020 WL 1322889 (N.D. Cal. Mar. 20, 2020).....................11

*Calder v. Jones,*
   465 U.S. 783 (1984)......................................................................................8

*Campbell v. Facebook Inc.,*
   315 F.R.D. 250 (N.D. Cal. 2016)..............................................................24

*Chan v. Soc'y Expeditions, Inc.,*
   39 F.3d 1398 (9th Cir. 1994) .......................................................................7

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)......................................................................................8

*Dohrmann v. Intuit, Inc.,*
   823 Fed. Appx. 482 (9th Cir. Aug. 11, 2020)..........................................17

*Duck Dive LP v. Heydari,*
   No. 13-cv-1477-BTM (BLM), 2013 WL 5724050 (S.D. Cal. Oct. 21, 2013).......12, 13

*Eisenberg v. Bbva United States,*
   No. 3:20-cv-2368-L-AHG, 2021 WL 5177773 (S.D. Cal. July 12, 2021)..................15

*Ellsworth v. Schneider Nat'l Carriers, Inc.,*
   No. 5:20-CV-01699-SB-SP, 2021 WL 6102514 (C.D. Cal. Oct. 28, 2021)..........15, 17

iii

# TABLE OF AUTHORITIES

*Garcia v. Enter Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015)..........................................................................24

*In re Google Asst. Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020).........................................................................23

*In re Google Inc.*,
   No. 13–MD–02430–LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...........24, 25

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015) ........................................................................................21

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021)................................................................3, 21, 22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)...................................................................................................7, 8

*I.C. v. Zynga, Inc.*,
   20-CV-01539-YGR, 2022 WL 2252636 (N.D. Cal. Apr. 29, 2022)............................16

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)........................................................................................................7

*Kelly v. Echols, M.D.*,
   No. CIVF05118AWISMS, 2005 WL 2105309 (E.D. Cal. Aug. 30, 2005) ...................13

*Knuttel v. Omaze, Inc.*,
   572 F. Supp. 3d 866 (N.D. Cal. 2021).........................................................................13

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ...........................................................................2, 20, 21

*Larroque v. First Advantage LNS Screening Sols., Inc.*,
   No. 15-CV-04684-JSC, 2016 WL 4577257 (N.D. Cal. 2016) ................................2, 18

*Lee v. Netgain Tech.*,
   LLC, No. 21CV1144-LL-MSB, 2022 WL 993552 (S.D. Cal. Apr. 1, 2022) ..7, 8, 9, 11

*Leong v. Myspace, Inc.*,
   No. CV 10-8366 AHM EX, 2011 WL 7808208 (C.D. Cal. Mar. 11, 2011)...............17

*Leroy v. Great W. United Corp.*,
   443 U.S. 173 (1979)......................................................................................................12

*Lindsay-Stern v. Garamszegi*,
   No. SACV 14-01970-CJC(DFMx), 2016 WL 11745948 (C.D. Cal. Oct. 13, 2016)...21

*Marek v. Molson Coors Beverage Co.*,
   580 F. Supp. 3d 848 (N.D. Cal. 2022)..........................................................................11

iv

**TABLE OF AUTHORITIES**

*Martinez v. Aero Caribbean*,
  764 F.3d 1062 (9th Cir. 2014) ............................................................... 8

*Massie v. Gen. Motors Co.*,
  No. 1:20-CV-01560-JLT, 2021 WL 2142728 (E.D. Cal. May 26, 2021) ............... 1, 10

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................ 19, 23

*Matera v. Google Inc.*,
  No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .................. 23

*Mavrix Photo Inc. v. Brand Techs. Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ..................................................... 7, 8, 9, 10

*Safe Air For Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .............................................................. 14

*Myers v. Bennett L. Offs.*,
  238 F.3d 1068 (9th Cir. 2001) .............................................................. 10

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
  2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) ............................................... 25

*Patao v. Equifax, Inc.*,
  No. CV 19-00677 JMS-WRP, 2020 WL 5033561 (D. Haw. Aug. 25, 2020) ............... 11

*Person v. Lyft, Inc.*,
  No. 1:19-CV-2914-TWT, 2020 WL 5639804 (N.D. Ga. Sept. 9, 2020) ................... 17

*Quigley v. Yelp, Inc.*,
  No. 17-CV-03771-RS, 2018 WL 7204066 (N.D. Cal. 2018)................................... 20

*Rahman v. Marriott Int'l, Inc.*,
  No. 8:20-cv-00654, 2021 WL 346421 (C.D. Cal. Jan. 12, 2021) ............................ 16

*Reis v. Fifth Third Bank*,
  No. 8:20-cv-01189-KES, 2020 WL 7062398 (C.D. Cal. Oct. 2, 2020)................... 1, 12

*Rodriguez v. Google LLC*,
  No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ...................... 2, 20

*Rosenow v. Facebook, Inc.*,
  No. 19-CV-1297-WQH-MDD, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ..... 19, 20

*Sacco v. Mouseflow, Inc.*,
  No. 220CV02330TLNKJN, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022)............. 8, 9

*Santana v. Take-Two Interactive Software, Inc.*,
  717 Fed. Appx. 12 (2d Cir. 2017)............................................................ 18

v

**TABLE OF AUTHORITIES**

*Scott v. Breeland*,
  792 F.2d 925 (9th Cir. 1986) ..................................................................14

*Silver v. Stripe Inc.*,
  No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ......18, 19, 24

*Smith v. Facebook, Inc.*,
  745 F. App'x 8 (9th Cir. 2018) ...........................................................3, 24, 25

*Smith v. Maryland*,
  442 U.S. 735 (1979) ...............................................................................16

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016).......................................................................14, 17

*St. Louis Heart Ctr., Inc. v. Nomax, Inc.*,
  899 F.3d 500 (8th Cir. 2018) .................................................................18

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
  830 F. App'x 821 (9th Cir. 2020) .....................................................14, 16

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)......................................................2, 14, 15, 17

*Underhill v. Kornblum*,
  2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ...........................................20

*United States v. Borowy*,
  595 F.3d 1045 (9th Cir. 2010) ...............................................................16

*Walden v. Fiore*,
  571 U.S. 277 (2014).............................................................................9, 11

*Warren v. Fox Fam. Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ...............................................................14

*Winner v. Kohl's Dep't Stores, Inc.*,
  No. CV 16-1541, 2017 WL 3535038 (E.D. Pa. 2017) .............................18

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014).............................................3, 19, 22

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ...................................................2, 19, 21, 22

**State Cases**

*Jacome v. Spirit Airlines Inc.*,
  No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) .........22, 25

vi

**TABLE OF AUTHORITIES**

*People v. Nakai,*
    183 Cal. App. 4th 499 (2010) ................................................................. 16

*Ribas v. Clark,*
    38 Cal. 3d 355 (1985) ................................................................. 19, 22

*Rogers v. Ulrich,*
    52 Cal. App. 3d 894 (1975) ................................................................. 22, 23

*Warden v. Kahn,*
    99 Cal. App. 3d 805 (Ct. App. 1979) ................................................................. 22

**Federal Statutes**

7 U.S.C. § 227 ................................................................................................. 18

18 U.S.C. § 2510 ................................................................................................. 1

18 U.S.C. § 2510(4) ............................................................................................ 20

18 U.S.C. § 2510(8) ............................................................................................ 21

18 U.S.C. § 2511(2)(d) ...................................................................................... 22

28 U.S.C. § 1391 ................................................................................................. 1

28 U.S.C. § 1391(b) ........................................................................................... 12

28 U.S.C. § 1391(b)(1) ................................................................................. 12, 13

28 U.S.C. § 1391(b)(2) ................................................................................. 12, 13

28 U.S.C. § 1391(b)(3) ....................................................................................... 12

**State Statutes**

740 Ill. Comp. Stat. § 14/1 ............................................................................... 18

Cal. Civ. Pro. Code § 410.10 ............................................................................. 7

Cal. Pen. Code § 631 ............................................................................. 3, 21, 22, 23

Cal. Pen. Code § 631 ......................................................................................... 20

Cal. Pen. Code § 631(a) ............................................................................. 1, 19, 20, 23

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................. 3, 23, 25

Fed. R. Civ. P. 12(b)(2) ................................................................................. 7, 12

Fed. R. Civ. P. 12(b)(6) ................................................................................. 3, 23

**TABLE OF AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff is trying to create a privacy claim against Greenlight based on its receipt of information she voluntarily provided on Greenlight's website, www.greenlight.com (the "Website"). Plaintiff claims that she visited the Website, "transmitted electronic communications" to Greenlight, *id.* ¶ 33, to which Greenlight responded by supplying the "information requested" (*id.* ¶ 35). It is Greenlight's alleged recording of this basic Website access that Plaintiff contends constitutes an unlawful wiretap under the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq*. and California Invasion of Privacy Act Cal. Penal Code § 631(a) ("CIPA"). Compl. ¶¶ 38, 49. Glaringly, Plaintiff fails to inform the Court that she consented to the very practice she complains of—Greenlight's alleged use of "technology that stores or collects information sent to us" including her "activities within [the Website]." Declaration of Ashley Noto ("Noto Decl.") ¶¶ 21-23, Ex. 2 at 4; Request for Judicial Notice ("RJN"), Ex. 3 at 2, 3. Plaintiff cannot establish Article III standing or maintain a privacy claim based on conduct she consented to. For these and multiple other reasons, her claims should be dismissed.

As a threshold matter, Greenlight is not subject to personal jurisdiction in California and the Southern District of California is an improper venue for Plaintiff's claims. The only connection that Plaintiff alleges between Greenlight and her claims in California is her own unilateral decision to use Greenlight's Website, which is not targeted to California but available nationwide and is not sufficient under due process to call Greenlight into court here. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020); *Massie v. Gen. Motors Co.*, No. 1:20-CV-01560-JLT, 2021 WL 2142728 (E.D. Cal. May 26, 2021). Similarly, Plaintiff's own conduct of allegedly accessing the Website within this District—and not any conduct of Greenlight's—does not establish proper venue under 28 U.S.C. 28 § 1391. *Reis v. Fifth Third Bank,* No. 8:20-cv-01189-KES, 2020 WL 7062398, at *4 (C.D. Cal. Oct. 2, 2020). Plaintiff's claims can and should have been brought in either the Northern District of Georgia—where Greenlight is headquartered—or the District of Delaware—its

DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS COMPLAINT

state of incorporation, but they should be dismissed here for lack of jurisdiction and improper venue.

Even if personal jurisdiction and venue were established, Plaintiff's claims still fail because she has not and cannot allege an Article III injury in fact that is necessary to maintain suit in federal court. The only harm that Plaintiff claims from Greenlight's alleged recording of her website interactions is a procedural violation of the Federal Wiretap Act or CIPA, which the Supreme Court has made clear is not a concrete harm sufficient to establish Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Moreover, Plaintiff expressly consented to Greenlight's recording of her interactions on the Website, and she cannot suffer an invasion of privacy for conduct that she agreed to. Noto Decl. ¶¶ 21, 22, 25; *see Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-CV-04684-JSC, 2016 WL 4577257, at *5 (N.D. Cal. 2016).

Thus, dismissal is proper for multiple reasons even without consideration of the merits of Plaintiff's claims. But on the merits, her claims also fail.

<u>First</u>, both the Federal Wiretap Act and CIPA prohibit only the *interception* of the *contents* of a communication, and Plaintiff alleges neither. An unlawful "interception" occurs only when a communication is acquired while "in transit," but not when it is accessed from electronic storage. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiff does not allege facts showing or even suggesting that Greenlight obtained her communications "in transit," rather than when it received and responded to her communications on the server supporting its website, which is not an interception under either statute. *See Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022). The "contents" of a communication under the Federal Wiretap Act and CIPA is limited to information showing the "substance, purport, or meaning" of a communication. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). "[R]ecord information," *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014), that only conveys characteristics of a message, such as the "mouse movements and clicks, keystrokes, search items, information inputted . . . and pages and content viewed" that

2

DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

Plaintiff claims Greenlight acquired here is not actionable. Compl. ¶¶ 7, 34, 43.

<u>Second</u>, Plaintiff's claim under the Federal Wiretap Act fails because the statute only requires one-party consent—Greenlight's own consent to any recording is dispositive of her claim. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014).

<u>Third</u>, Plaintiff's CIPA claim fails because § 631 does not prohibit a party to a communication—like Greenlight—from recording it. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021).

<u>Fourth</u>, if the Court is disinclined to consider Plaintiff's consent to any alleged recording under Rule 12(b)(1), the fact that a visitor to the Website must either implicitly or expressly consent to Greenlight's Privacy Policy—which discloses the recording she complains of—is properly considered under Rule 12(b)(6), and dispositive of her claims. *See* RJN, Ex. 4. *Smith v. Facebook, Inc*., 745 F. App'x, 8 (9th Cir. 2018).

## II.    FACTUAL BACKGROUND

### A. Greenlight Is A Delaware Corporation, Headquartered In Atlanta, That Does Not Target California With Its Services

Greenlight is a Delaware corporation headquartered in Atlanta, Georgia. Compl. ¶ 23; Declaration of Ashley Noto ("Noto Decl.") ¶ 3. Greenlight has approximately 382 full time employees, 223 of whom are in Georgia and only 40 of whom are in California. *Id*. ¶ 4. Greenlight's California employees do not control Greenlight's use of session replay software, from which Plaintiff's claims arise. *Id*. ¶ 12. Greenlight has a *de minimis* physical presence in California. It rents a WeWork space in San Jose, California, that its local employees may use—but no employees are required to use. No more than twenty-two employees use the office space from time to time. *Id*. ¶ 5. Greenlight does not rent any server space for customer serving instances of the Website within California. *Id*. ¶ 8. Greenlight has no other physical presence in California. *Id*. ¶ 6.

Greenlight's Website is accessible nationwide. Noto Decl. ¶ 11. In advertising its services online, Greenlight has never targeted California, whether by email or other digital advertisements. *Id*. ¶ 9. In two limited circumstances, Greenlight's promotional materials

have been displayed in-person to residents of Northern California—which is not where Plaintiff resides. *Id.* First, in 2022 Greenlight took out a one-page ad on page 92 of a printed program for a single swim meet for the East Bay Swim League in Fremont, California. *Id.* No more than 500 individuals attended the meet and could have received the program. *Id.* Second, in 2022, Greenlight sponsored a cricket team on which an employee played in Mountain House, California, pursuant to which Greenlight's logo was displayed on the team's jerseys. *Id.* No more than 500 families participate in the cricket league. *Id.* Plaintiff does not, and cannot reasonably, claim that she learned of Greenlight's services from either of these limited distribution physical displays of its logo in a part of California where she does not reside. *See* Comp.

## B. Greenlight's Disclosures Regarding Its Collection Of Website Activity

The Greenlight Website is predominantly informative in nature, containing a variety of links that users can click on to learn more about Greenlight's services. Request for Judicial Notice, Ex. 1. Front and center on the homepage of the Website is a prominent disclosure that informs all visitors: "Learn how we collect and use your information by visiting our <u>Privacy Statement</u>." Noto Decl. ¶ 16; RJN, Ex. 4. The phrase, "<u>Privacy Statement</u>" embeds a hyperlink to Greenlight's Privacy Statement. This disclosure is conspicuously located in the middle of the page below a field where visitors may enter their mobile number to begin the enrollment process for Greenlight's services. *Id.*



4

DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

Noto Decl., ¶ 16; RJN, Ex. 4.

Any visitor who enrolls in Greenlight's services affirmatively agrees to Greenlight's Terms of Service and Privacy Statement. A Website visitor *must* indicate his or her assent during the enrollment process by clicking "Next" above the statement "By clicking next, you are accepting Greenlight's <u>Terms of Service</u> &  <u>Privacy Statement</u>" to enroll in Greenlight's services:



Noto Decl. ¶ 21; RJN, Ex. 5.

Plaintiff enrolled in Greenlight's services on June 16, 2022. Noto Decl. ¶ 25. She therefore expressly assented to Greenlight's Privacy Statement, which explicitly informed her that Greenlight "collects . . . your activities within Greenlight Services, including the portions of the Website . . . you access," and including through "third-party service providers" and their "technology." Noto Decl. ¶ 21-23, Ex. 2 at 4.[1]

---

[1]    "Greenlight's Services" is defined as "services, products, features, functions, technologies, or content offered on the Website, the Application, and all related sites and applications, regardless of how accessed, including by computer, mobile phone, tablet or any other device." Noto Decl., Ex. 1, p. 1.

The Privacy Statement was updated on August 3, 2022 and continues to the present day that Greenlight collects:

### C. Plaintiff's Claims Arising From Greenlight's Use Of Session Replay

Plaintiff is a resident of San Diego, California. Compl. ¶ 22. Plaintiff allegedly visited the Website at undisclosed times "[o]ver the last year and beyond." *Id.* ¶ 32. Plaintiff's claims arise from Greenlight's alleged use of session replay software to record her Website interactions. *Id.* ¶ 38. While it is true that Greenlight has used session replay on the Website, it does not operate as Plaintiff contends.

Plaintiff describes session replay as a "code" "embedded within" the Website that allowed Greenlight to record her "mouse clicks and movements, keystrokes, search terms, information inputted by [her], pages and content viewed, scroll movements, and copy and paste actions" on the Website. *Id.* ¶¶ 38, 43. Although Plaintiff asserts the legal conclusion that her activities on the Website "relat[ed] to the substance, purport and/or meaning" of her "communications with the website" (*id.* ¶ 47), she fails to allege the content of any message Greenlight supposedly recorded by collecting her non-substantive mouse clicks, keystrokes, pages clicked, or other interactions. And Greenlight's Website is almost entirely informative and *not* interactive in nature. RJN, Ex. 4. Greenlight does *not* use session replay to record information that users may input through the account enrollment process, and it does not use session replay to record visitor's IP addresses or locations. Noto Decl. ¶¶ 14, 15 .

Further, Plaintiff does not dispute that she intended to communicate with Greenlight and provide her alleged communications while on the Website. *See id.* ¶¶ 51, 52. While

---

**Internet and usage information**: such as internet protocol (IP) addresses, type of browser, Internet Service Provider (ISP), clicked pages and any other information about how you and your family use the Service.

This information is collected from a "variety of sources," including:

. . .

Like many digital platforms, Greenlight and our third-party service providers may collect certain information automatically using cookies and other similar technologies to help us manage, improve and customize our features and functionality.

Noto Decl., Ex. 3, p. 2, 3.

Plaintiff labels the use of session replay software an "invasion of her privacy," she does not claim that she provided anything private or sensitive on the Website, let alone that that information was unlawfully collected by Greenlight with the use of session replay software (which it wasn't). Compl. ¶¶ 53-54; Noto Decl. ¶ 14. Plaintiff does not claim to have suffered any specific harm.

## III. THE COURT LACKS PERSONAL JURISDICTION OVER GREENLIGHT

### A. Standards For Motions To Dismiss Pursuant To Rule 12(b)(2)

Plaintiff's claims should be dismissed because Greenlight is not subject to personal jurisdiction in California. "[P]laintiff[] bear[s] the burden of demonstrating that jurisdiction is appropriate." *Lee v. Netgain Tech.*, LLC, No. 21CV1144-LL-MSB, 2022 WL 993552, at *2 (S.D. Cal. Apr. 1, 2022) (Lopez, J.) (citations omitted). When ruling on a motion to dismiss pursuant to Rule 12(b)(2), the court resolves all contested facts in plaintiff's favor, but a plaintiff cannot establish jurisdiction when faced with contrary evidence by relying on the complaint alone. *Id.* (citing *Mavrix Photo Inc. v. Brand Techs. Inc.*, 647 F.3d 1218 (9th Cir. 2011)). "[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Id.* "Second, the exercise of jurisdiction must comport with federal due process." *Id.* at 1404-05 (citation omitted). Because California's long-arm statute reaches as far as due process allows, *see* Cal. Code Civ. Proc. § 410.10, the Court need consider only whether the exercise of jurisdiction comports with due process. Due process requires that nonresident defendants have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

Personal jurisdiction may be either general or specific. *Helicopteros Nacionales de*

*Colombia, S.A. v. Hall,* 466 U.S. 408,414 nn.8-9 (1984). "General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state 'are so constant and pervasive as to render it essentially at home' in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 122 (2014)). "Specific jurisdiction" exists where a claim arises directly from a defendant's contacts with the forum. *Helicopteros,* 466 U.S. at 414 n.8.

Plaintiff asserts that Greenlight is subject to jurisdiction here because it "conducts business within the state of California." Compl. ¶ 29. Therefore, the only issue before the Court is whether Greenlight is subject to specific jurisdiction, since Plaintiff does not assert that Greenlight, a Delaware entity with its principal place of business in Georgia, is subject to general jurisdiction here. *Id.* ¶ 23.

## B. Greenlight Is Not Subject To Specific Jurisdiction In California.

A three-part test governs whether specific jurisdiction exists in the Ninth Circuit:

> (1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo Inc.*, 647 F.3d at 1228-29. Plaintiff "bears the burden of satisfying the first two prongs." *Id.* at 1228. If she does, "the burden then shifts to [defendant] to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

In cases involving allegedly intentional torts, courts apply the three-part "effects" test first espoused in *Calder v. Jones*, 465 U.S. 783, 789 (1984) to determine whether there is purposeful direction or availment. *Sacco v. Mouseflow, Inc.*, No. 220CV02330TLNKJN, 2022 WL 4663361, at *4 (E.D. Cal. Sept. 30, 2022) (applying test to wiretapping causes of action); *Lee*, 2022 WL 993552, at *3 (applying test to invasion of privacy claim and state statutory claims following data breach). Under the *Calder* "effects" test, a defendant must

8

have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Lee*, 2022 WL 993552, at *3 (quotation marks and citations omitted). In considering whether an act is 'expressly aimed at the forum state' under the effects test, the Supreme Court has made two clarifications to *Calder*: "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore,* 571 U.S. 277, 284 (2014) (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462,475 (1985)). "Second, [a court's] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden,* 571 U.S. at 285. Reliance on "random, fortuitous, or attenuated contacts" or on the 'unilateral activity' of a plaintiff is insufficient. *Id.* at 286 (quoting *Burger King,* 471 U.S at 475). Plaintiff has not established a basis for specific personal jurisdiction over Greenlight here.

Operation of a website made available nationwide does not create specific jurisdiction in California without "something more—conduct directly targeting the forum." *Wanat,* 970 F.3d at 1210 (quoting *Mavrix Photo, Inc., Inc.,* 647 F.3d at 1229 ("Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed.")). The forum state must be "'the *focal point*' of the website 'and of the harm suffered.'" *Wanat,* 970 F.3d at 1212 (quoting *Walden,* 571 U.S. at 287) (emphasis added). There is no "express aiming" where "the harm would have befallen the plaintiff no matter his location." *Sacco*, 2022 WL 4663361, at *5.

The harm alleged here—"the [alleged] recording of Plaintiff's visit to [the Website] and the collection of [her] personal data"—would have occurred no matter the state Plaintiff was in. *Id.* "Defendant did nothing specifically directed at California or California residents to tether [its Website] to this forum." *Id*; Noto Decl. ¶¶ 3-12. Further, Greenlight's Website cannot provide "something more" to show express aiming towards California. Unlike the *Mavrix* defendant's advertisements that were intentionally directed at California viewers, *see Mavrix*, 647 F.3d at 1229-30, Greenlight's Website—to the extent it is considered an advertisement—is not aimed at California. Noto Decl. ¶ 11. Neither can Greenlight's one-

9

DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

time print advertisement, nor its sponsorship of an employee's local cricket team, establish personal jurisdiction under *Calder* because plaintiff cannot plausibly allege that her claims would not have arisen but-for those limited actions. Moreover, it is not even plausible that plaintiff, a San Diego resident, would have seen the print publication at the back of a program available at one swim meet, or Greenlight's name on a local cricket team's jerseys, in Northern California. *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1075 (9th Cir. 2001) ("Plaintiffs must show that they would not have suffered an injury 'but for' Bennett's forum related conduct."). Plaintiff does not contend that her claims arise out of or relate to these de minimis physical advertisements in a part of the state where she does not reside. *Cf. Marvix Photo*, 647 F.3d at 1228 (claim based on posting of allegedly infringing photographs online arose out of forum-directed conduct where website was directed to California residents).

The case of *Massie v. Gen. Motors Co.,* is instructive on the lack of personal jurisdiction here. In *Massie*, plaintiffs brought a putative class action asserting CIPA and Wiretap Act claims based on defendants' alleged collection of website visitors' "mouse clicks, keystrokes, names, zip codes, phone numbers, email addresses, IP addresses, and locations" with session replay software. *Massie*, 2021 WL 2142728, at *1. Plaintiffs were California residents located in California when they visited GM's "nationally accessible" website. *Id.* As in *Massie*, Greenlight's Website "lack[s] a forum specific focus as the market for [Defendant's products] is nationwide." *Id.* at *5; Noto Decl. ¶ 11. As in *Massie*, Greenlight's use of session replay software to allegedly record website sessions, *see* Noto Decl. ¶¶ 13-15, is not "designed specifically to target and attract Californians" to the Website or its services. *Massie*, 2021 WL 2142728, at *4. The facts showing no personal jurisdiction over Greenlight are even stronger here than in *Massie*: unlike GM's collection of "users' location at the time of visit," Greenlight does not use session replay to "detect IP address or other geolocation information from Website visitors," and thus it cannot be inferred that Greenlight "knew [it was allegedly] wiretapping California customers." *Id.*; Noto Decl. ¶15. But even if Greenlight did collect geographic information with session replay software, "mere foreseeability that someone may be harmed in the forum state does not suffice to

10

confer specific personal jurisdiction." *Massie*, 2021 WL 2142728 at *8 (citing *Walden*, 571 U.S. at 289).

Nor does Greenlight's minimal physical presence within California confer specific jurisdiction. *Lee* is instructive on this point. In *Lee*, plaintiff filed a putative class action asserting invasion-of-privacy and state statutory claims following nonresident defendant Netgain's alleged data breach. This Court dismissed the case for lack of personal jurisdiction because plaintiff's only allegations "specifically related to personal jurisdiction [was] that Netgain 'conducts much of its business in' California." *Lee*, 2022 WL 993552, at *7. Plaintiff makes the same conclusory assertion here. *See* Compl. ¶ 29. Both Netgain and Greenlight "only ha[ve] one satellite office in California that is staffed by only a few employees," *Lee*, 2022 WL 993552, at *4, none of whom, in *Lee*, "provided services to" the healthcare organization whose data was breached (*see id.*) or, here, control Greenlight's use of session replay (*see* Noto Decl. ¶ 12). And Greenlight's customer serving instances of server space, like Netgain's storage of data that had allegedly been breached, is not in California. *Id.* ¶ 12; *Lee*, 2022 WL 993552, at *4. Like the "nationwide" nature of the security failure in *Lee*, allegations that Greenlight allegedly wiretapped visitors without regard to location on a Website accessible nationwide cannot confer specific jurisdiction over Greenlight in California. Noto Decl. ¶¶ 11, 12; *Lee*, 2022 WL 993552, at *7 n.9 (citing *Caces-Tiamson v. Equifax*, No. 20-cv-00387-EMC, 2020 WL 1322889, at *3 (N.D. Cal. Mar. 20, 2020) ("Nor can specific jurisdiction be based on the mere fact that [the defendant] provides services to customers nationwide[.]")). [E]ven "if Plaintiff was a resident of California and suffered harm in California, that fact alone would not be enough for specific jurisdiction." *Lee*, 2022 WL 993552, at *4, *4 n.6 (citing *Patao v. Equifax, Inc.*, No. CV 19-00677 JMS-WRP, 2020 WL 5033561, at *4 (D. Haw. Aug. 25, 2020) (data breach that caused plaintiff to suffer harm in forum is "insufficient to establish specific jurisdiction")).

Plaintiff has alleged only that Greenlight—by operating a website accessible across the United States, *see* Compl. ¶ 57—conducts business in California. *see* Compl. ¶ 29. This conclusory allegation does not confer personal jurisdiction over Greenlight. *Marek v.*

11

*Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 855 (N.D. Cal. 2022) (being registered to do business in California does not confer personal jurisdiction). Plaintiff's claims should be dismissed pursuant to Rule 12(b)(2).

## IV.    VENUE IS IMPROPER

### A. Standards For Motions To Dismiss Pursuant To Rule 12(b)(3)

In addition to lacking personal jurisdiction over Greenlight, venue is improper in the Southern District of California. Pursuant to 28 U.S.C. § 1391(b), venue is only proper in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Plaintiff bears the burden of showing that venue is proper, which she has not done here. *Duck Dive LP v. Heydari*, No. 13-cv-1477-BTM (BLM), 2013 WL 5724050, at *2 (S.D. Cal. Oct. 21, 2013).

### B. The Court Should Dismiss Plaintiff's Claims For Improper Venue.

Plaintiff argues that venue is proper on the grounds that "the conduct complained of herein occurred within this judicial district" and "Defendant conducted business within this judicial district at all times relevant." Compl. ¶ 30. Plaintiff correctly chose not to invoke venue § 1391(b)(l) or (b)(3), but venue is improper as well under § 1391(b)(2).

"[P]roper venue is determined by the judicial district where the defendant resides, not the plaintiff" because "the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Reis v. Fifth Third Bank,* No. 8:20-cv-01189-KES, 2020 WL 7062398, at *4 (C.D. Cal. Oct. 2, 2020) (quoting *Leroy v. Great W. United Corp.,* 443 U.S. 173, 183-84 (1979)). Because venue "is a privilege of the defendant," "the court should generally focus on activities of the defendant and not the activities of plaintiff" when evaluating proper venue under § 1391(b)(2). *Kelly v. Echols, M.D.,* No. CIVF05118AWISMS, 2005 WL 2105309, at *12

(E.D. Cal. Aug. 30, 2005). "In determining whether events or omissions are sufficiently substantial to support venue under § 1391[b](2), the court should review the entire sequence of events underlying the claim." *Id.*[2] Plaintiff's claims against Greenlight arise from Greenlight's alleged collection of Plaintiff's communications on the Website. Compl. ¶¶ 33-38. These allegations do not establish acts or omissions *by Greenlight* within the venue. As discussed, *supra* § III, Greenlight's conduct that forms the basis of Plaintiff's Complaint—Greenlight's alleged use of session replay software to record interactions from visitors nationwide on the Website—only bears a relation to the Southern District of California because *Plaintiff resides in the District*. Compl. ¶ 22. The only "business" that Greenlight has in this district results from Greenlight making its Website accessible nationwide, *i.e.*, in *all* judicial districts. This connection to this District is too attenuated to constitute a substantial part of the claim. *See Bogart, LLC v. Corinthian, Inc.*, No. CV1107665GAFPLAX, 2012 WL 13009154, at *4 (C.D. Cal. May 3, 2012) (venue not proper based solely on the accessibility of the website within the district); *see also Duck Dive*, 2013 WL 5724050, at *3 (same).

Plaintiff does not even allege that she visited the Website in this District. Nevertheless, that would not establish proper venue. "Otherwise, venue almost always would be proper at the place of the plaintiff's residence." *Knuttel v. Omaze, Inc.*, 572 F. Supp. 3d 866, 870 (N.D. Cal. 2021). "At the heart of [Plaintiff's] claims are [Greenlight's] decisions" about the Website and use of session replay software. *Id.* (finding improper venue where all "decision-making concerning Omaze's Website and marketing efforts [was] centralized at Omaze's headquarters in Los Angeles, California"). Plaintiff's visit to the Website—the "single triggering event that ultimately ripened [Plaintiff's claims]—is not enough under 1391(b)(2);

---

[2]    *Kelly* cites to Section 1391(a)(2) which at the time provided for proper venue where "a substantial portion of the events or omissions giving rise to the claim occurred." *Kelly*, 2005 WL 2105309, at *12. In 2011, Section 1391 was amended to the current text, and proper venue based upon a "substantial part of the events or omissions giving rise to the claim occurred" is now subsection (b)(2). 28 U.S.C. § 1391(b)(2); Pub. L. 112-63, Title II, § 202, Dec. 7, 2011, 125 Stat. 763.

instead, venue is proper where the "sequence of events underlying [Plaintiff's] claims" took place, *i.e.*, Atlanta, Georgia. Noto Decl. ¶ 12; *Omaze, Inc.*, 572 F. Supp. 3d at 870. Venue is, therefore, either proper in the Northern District of Georgia, pursuant to § 1391(b)(2) or the District of Delaware pursuant to § 1391(b)(1), but not here.

## V.    PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT

### A. Standards For Motions To Dismiss Pursuant To Rule 12(b)(1)

Assuming that this Court does not dismiss the case entirely for lack of personal jurisdiction and improper venue, Plaintiff has not alleged a basis for suing in federal court because she has not established—and cannot establish—an injury in fact required to maintain standing under Article III. Plaintiff, as "the party seeking to invoke the court's jurisdiction bears burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). "A jurisdictional challenge under to Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). On a facial attack, a court accepts as true only the "well-pleaded factual allegations" of the complaint. *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 F. App'x 821, 822 (9th Cir. 2020). In resolving a factual attack, a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and the court "need not presume the truthfulness of the plaintiff's allegations." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

### B. Constitutional Requirements For Standing

To establish "the irreducible constitutional minimum" of standing, plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548.

Under Article III, "an injury in law is not an injury in fact." *Ramirez*, 141 S. Ct. at

14

2205. "Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *Id*. at 2204. So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. But courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*.

In *Ramirez*, the Supreme Court "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 2205. "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id*. Contending that a statutory violation is "of the type that [gives] rise to standing . . . misses the point of *TransUnion*"—the harm alleged must bear a 'close relationship' to the kind of harm long recognized by American law . . . ." *Ellsworth v. Schneider Nat'l Carriers, Inc.*, No. 5:20-CV-01699-SB-SP, 2021 WL 6102514, at *4-5 (C.D. Cal. Oct. 28, 2021) (quoting *Ramirez*, 141 S. Ct. at 2208-09); *see Eisenberg v. Bbva United States*, No. 3:20-cv-2368-L-AHG, 2021 WL 5177773, at *2 (S.D. Cal. July 12, 2021) ("a pure procedural violation—on its own—is insufficient")

### C. Plaintiff Has Not Alleged A Concrete Harm

Plaintiff's claims arise from Greenlight's alleged use of software supplied by a third-party to allegedly record her unspecified "mouse movements and clicks, keystrokes, search items, information inputted into the website, and pages and content viewed" on the Website. Compl. ¶¶ 7, 34, 43. Plaintiff does not allege what she allegedly communicated on the Website, only that the recording occurred without her consent. *Id*. ¶ 51. Plaintiff does not allege that she has suffered *any* harm. She alleges no disclosure of her information to third parties, nor does she allege any monetary, physical, or reputational loss. Instead, she merely recites the elements of the Wiretap Act and CIPA and concludes, without explanation, that this invaded her privacy. *Id*. ¶¶ 53-54. But under *Ramirez*, simply alleging a Wiretap Act or CIPA claim—the alleged recording of a communication without

15

consent—is insufficient to satisfy Plaintiff's burden of establishing an Article III injury in fact. *Ramirez*, 141 S. Ct. at 2205; *see Ellsworth*, 2021 WL 6102514, at *5 (statutory violation of the FCRA did not establish standing because "Plaintiff does not claim that the publication of the allegedly inaccurate information caused him to suffer any harm—reputational or otherwise").

Plaintiff analogizes her claims to a Fourth Amendment violation and common law trespassing, but she does not allege any facts that are akin to those causes of action. Compl. ¶ 54. Both claims are dependent upon a defendant's allegedly unauthorized intrusion into non-public matters or spaces. *See United States v. Borowy*, 595 F.3d 1045, 1048 (9th Cir. 2010) (no reasonable expectation of privacy in computer files made freely accessible and shared to others). Here, on the other hand, Plaintiff concedes that she intended to provide to Greenlight whatever information Greenlight allegedly recorded online, and she cannot reasonably maintain that she expected it to be private vis-à-vis Greenlight. *See People v. Nakai*, 183 Cal. App. 4th 499, 418 (2010) (party could not reasonably believe that online communications were confidential because "[c]omputers that are connected to the internet are capable of instantaneously sending writings and photographs to thousands of people."). "[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-744 (1979).

Plaintiff's conclusory allegations that Greenlight's alleged recording of her unidentified mouse clicks, key strokes, search items, information inputted, pages and content viewed, scroll movements, and copy and paste actions invaded her privacy are not assumed true. *Superama Corp., Inc.*, 830 F. App'x at 822. While she claims that Greenlight can collect sensitive or personal information, Compl. ¶ 46, she doesn't allege that Greenlight recorded any such information with session replay software (which it didn't do). Greenlight's alleged recording of vague categories of unidentified information does not give rise to Article III standing. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (unauthorized disclosure of plaintiff's "basic contact information, including one's email address, phone number, or Facebook or Zynga username" not

16

sufficient to confer Article III standing because the information is not "private" and all of it was "designed to be exchanged to facilitate communication and is thus available through ordinary inquiry and observation"); *Rahman v. Marriott Int'l, Inc.*, No. 8:20-cv-00654, 2021 WL 346421, at *1-2 (C.D. Cal. Jan. 12, 2021) (holding that the unauthorized disclosure of names, addresses, phone numbers, email addresses, genders, birth dates, and loyalty account numbers "lack[ed] the degree of sensitivity required" for standing); *see also Ellsworth*, 2021 WL 6102514, at *5 (FCRA violation based on allegedly misleading form did not confer Article III standing because it was not akin to the kind of harm "long recognized by American law"). Plaintiff's claim that Greenlight violated her "substantive legal privacy rights under the Wiretap Act and CIPA," Compl. ¶ 17, is precisely the sort of bare procedural violation "divorced from any concrete harm" insufficient to establish standing under *Ramirez*. *Id.* at 2213 (quoting *Spokeo*, 578 U. S., at 341, 136 S. Ct. 1540). Facially, Plaintiff has not alleged a plausible Article III injury.

### D. Plaintiff Cannot Establish A Concrete Harm.

Plaintiff cannot suffer an injury in fact for conduct she consented to. Contrary to her allegation that she received no notice "alerting [her] that the visits to the website were monitored and recorded" (Compl. ¶ 36), the uncontroverted evidence shows the opposite: Plaintiff assented to Greenlight's collection of her "information automatically" "[w]hen she use[d], visit[ed], or otherwise interact[ed] with [the Website]": "we and our third-party service providers may use technology that stores or collects information sent to us by your computer, browser, mobile phone, or other device [including] . . . your activities within [the Website], [and] the portions of the Website and Greenlight App you access; your email address and mobile phone number; and other information." Noto Decl ¶ 23, Ex. 2.[3] Greenlight did not use session replay software to acquire any information that Plaintiff may

---

[3]    The Privacy Statement is an enforceable clickwrap agreement. *E.g.*, *Person v. Lyft, Inc.*, No. 1:19-CV-2914-TWT, 2020 WL 5639804, at *1 (N.D. Ga. Sept. 9, 2020) (finding consent where the plaintiff "clicked the box next to 'I agree to Lyft's Terms of Service,' [which were hyperlinked], and then clicked 'NEXT'"); *see also Dohrmann v. Intuit, Inc.*, 823 Fed. Appx. 482, 484 (9th Cir. Aug. 11, 2020).

have input into forms in the enrollment process prior to her agreement to the Privacy Statement (or thereafter). Noto Decl. ¶ 14. Even before Plaintiff created her account, she was provided express notice of Greenlight's privacy practices and its use of tools to collect website interactions by the prominent disclosure at the front and center of the webpage that directed her to Greenlight's Privacy Statement. Noto Decl. ¶ 16; RJN, Ex. 4.

Plaintiff's express agreement to the Privacy Statement that disclosed that Greenlight may use tools to collect her website interactions constitutes consent to any alleged recording under CIPA and the Wiretapping Act, and bars her claims. *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing CIPA and Wiretap Act claims based on consent to privacy policy that disclosed alleged recording of communications). Courts regularly grant motions to dismiss for lack of Article III standing where, as here, a plaintiff validly consented to the conduct she complains of. *See Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-CV-04684-JSC, 2016 WL 4577257, at *5 (N.D. Cal. 2016) (dismissing FCRA claims for lack of standing where "[plaintiff] expressly consented in writing to the release of a credit report and/or investigative consumer report concerning me by a credit reporting agency [i.e. Defendant]' and authorized Pacific's use of her reports"); *see also St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500 (8th Cir. 2018) (no standing for violations of the Telephone Consumer Protection Act, 7 U.S.C. § 227, where plaintiff conceded he gave consent by requesting that defendant transmit the facsimiles at issue); *see also Santana v. Take-Two Interactive Software, Inc.*, 717 Fed. Appx. 12 (2d Cir. 2017) (no injury-in-fact from defendant's alleged creation of a face scan in violation of the Illinois Biometric Information Privacy Act, 740 Ill. Comp. Stat. § 14/1, *et seq.*, where the plaintiff was required to click assent to terms and conditions disclosing that the plaintiff's face would be scanned prior to playing video game); *see also Winner v. Kohl's Dep't Stores, Inc.*, No. CV 16-1541, 2017 WL 3535038, at *6 (E.D. Pa. 2017) ("We find that Plaintiff Winner and Plaintiff Jennings expressly consented to receive Defendant's autodialed calls to action telemarketing texts. . . . Because they consented to receiving the texts, Plaintiffs can show no concrete and

particularized injury-in-fact"). Because Plaintiff expressly consented to Greenlight's collection of her "information sent to [Greenlight] by [her] computer, browser, mobile phone, or other device [including] . . . [her] activities within [the Website]," her claims should be dismissed for lack of standing. RJN Ex. 3.

## VI.    PLAINTIFF HAS NOT STATED A PLAUSIBLE CLAIM

As set forth above, the Court need not reach the merits of Plaintiff's claims to dismiss them entirely for lack of personal jurisdiction, improper venue, and lack of Article III standing. But on the merits, Plaintiff's claims fail as a matter of law. The Federal Wiretap Act and CIPA only prohibit the unauthorized "interception" of a communication, which requires that the communication was acquired "in flight," which Plaintiff fails to allege. *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQH-MDD, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020). Both statutes also only prohibit the interception of the "contents" of a communication, which is limited to its "substance, purport, or meaning," and courts have resoundingly rejected the data elements that Plaintiff claims Greenlight recorded as non-substantive and, thus, non-actionable. *In re Zynga Priv. Litig.*, 750 F.3d at 1108. Plaintiff's Federal Wiretap Act claim fails because only the consent of one party is required for a recording to be authorized, and Greenlight indisputably consented here. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014). Similarly, Plaintiff's CIPA claim fails because the statute does not prohibit a party to a communication, like Greenlight, from recording it. *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). Plaintiff also has no claim under the first clause of CIPA § 631(a) because it only applies to the interception of communications over a telephone, not via a smartphone or a website supported by a server. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135–36 (E.D. Cal. 2021). Finally, the Court may take judicial notice of Plaintiff's consent to any alleged recording, which bars her claims. *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021).

### A. Standards For Motions To Dismiss Pursuant To Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

19

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While factual allegations are assumed true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

### B. Plaintiff Does Not Plausibly Allege An "Interception."

The Federal Wiretap Act and CIPA only prohibit the unauthorized "interception" of a communication.[4] *Rosenow*, 2020 WL 1984062, at *7 ("The Wiretap Act makes it unlawful to 'intentionally intercept[ ] . . . any wire, oral, or electronic communication'"); Cal. Penal Code § 631(a) (protecting communication while "in transit . . . or is being sent from, or received at any place within this state"). "For a communication 'to be intercepted in violation of the Wiretap Act, it must be acquired during transmission, not while in electronic storage.'" *Rosenow*, 2020 WL 1984062, at *7 (quoting *Konop*, 302 F.3d at 878).

Plaintiff alleges "interception" in conclusory terms that do not satisfy *Iqbal* or *Twombly*. She asserts that Greenlight supposedly intercepted her communications "contemporaneously" or "in transit," and posits that session replay permits a company to "view the interactions on Defendant's website in live, real-time." Compl. ¶¶ 9, 12, 43, 86. But just "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [Greenlight] is intercepting [Plaintiff's] data in transit," which Plaintiff does not allege. *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (dismissing CIPA § 631(a) claims for failure to state a claim); *see Rosenow*, 2020 WL 1984062, at *7 (allegation that Yahoo violated the Wiretap Act by using an "algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" conclusory and failed to state a claim); *Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018

---

[4] The terms "intercept" under the Federal Wiretap Act, 18 U.S.C. § 2510(4), and "in transit" under CIPA, Cal. Penal Code § 631(a), are interpreted coextensively. *Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017).

WL 7204066 at *4 (N.D. Cal. 2018) (dismissing Wiretap Act and CIPA § 631 claims where plaintiff alleged "vague references" to the use of "surveillance systems" and "surveillance personnel" but did not "allege with particularity how or when defendant became aware of his communications" allegedly acquired without permission). Plaintiff alleges no facts that would support an inference that any recording of her communications occurred while "in transit" as opposed to when they were received by Greenlight on its server supporting the Website, which is not an interception. *Konop*, 302 F.3d at 878; *Lindsay-Stern v. Garamszegi*, No. SACV 14-01970-CJC(DFMx), 2016 WL 11745948, at *4 (C.D. Cal. Oct. 13, 2016) ("Caselaw generally stands for the proposition that once an [electronic communication] has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible."). Her claims should be dismissed because Plaintiff's allegation of an interception are conclusory and not plausible.

### C. Plaintiff Has Not Alleged That Greenlight Acquired Any Contents.

The Federal Wiretap Act and CIPA only prohibit the unlawful interception of the "contents" of a communication, which Plaintiff does not allege Greenlight acquired here. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). The Wiretap Act and CIPA define "contents" as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8); *Graham*, 533 F. Supp. 3d at 833 ("The 'contents' of a communication under CIPA and the federal Wiretap Act are the same."). Contents can be distinguished from "non-content" or "record information" about a communication, like "extrinsic information used to route a communication," that is not actionable if collected. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015); *In re Zynga Priv. Litig.*, 750 F.3d at 1108.

Plaintiff alleges that Greenlight acquired her "mouse movements and clicks, keystrokes, search items, information inputted into the website, and pages and content viewed" while visiting the Website. Compl. ¶¶ 7, 34, 43. Courts have expressly rejected these data elements as non-substantive information that is not actionable under the Wiretap Act or CIPA. "Mouse clicks and movements, keystrokes, search terms, information

inputted by Plaintiff, and pages and content viewed by Plaintiff [are] precisely the type of . . . information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs." *Jacome v. Spirit Airlines Inc*., No. 2021-000947-CA-01, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17, 2021) (collecting authorities); *see In re Zynga*, 750 F.3d at 1107 ("location of a webpage a user is viewing on the internet" not "contents" under Wiretap Act); *see also, e.g.*, *Graham*, 533 F. Supp. 3d at 833 (names, addresses, customer identities, are not "contents"). Plaintiff does not allege that Greenlight acquired any substantive communications from her, and her claims should be dismissed.

### D. Greenlight's Consent Is A Complete Bar To Plaintiff's Wiretap Act Claim.

Under the Wiretap Act, it is not unlawful for a person "to intercept a[n] . . . electronic communication where such a person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). Greenlight's consent thus bars Plaintiff's Wiretap claim. Compl. ¶¶ 4, 38, 50; *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1028 ("The Wiretap Act only requires one party to the communication to consent to an interception to relieve the provider of liability.").

### E. CIPA § 631(a) Does Not Apply To A Party To The Communication.

Plaintiff cannot maintain a claim against Greenlight under CIPA § 631(a) because the statute does not prohibit a party to the communication from recording it. CIPA "Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by *third parties*." *Ribas v. Clark*, 38 Cal. 3d at 359 (emphasis added) (citing *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975)). "*Only* a *third party* can listen to a conversation secretly . . . . By contrast, a party to a communication can record it (and is not eavesdropping when it does)." *Graham*, 533 F. Supp. 3d at 831 (emphasis added) (citing *Rogers*, 52 Cal. App. 3d at 897-99); *see also*, *e.g.*, *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979) (Section 631 "has been held to apply only to eavesdropping by a third party and *not to recording by a participant to a conversation*." (emphasis added)).

Plaintiff alleges that Greenlight (i) embeds code provided by a session replay

22

provider on the Website; and (ii) uses that code to record Plaintiff's interactions with the Website. *E.g.*, Compl. ¶ 43 ("Defendant utilized 'session replay' spyware to intercept the substance of Plaintiff's . . . . electronic communications"); *id.* ¶¶ 4, 38, 41, 75. These allegations do not state a claim because Greenlight was a party to these communications. In *Rogers*, the California Court of Appeal held that a city employee could not be liable under § 631(a) for installing a "tape recorder jack" on his phone so he could record conversations and "relay part of these conversations" to others, because Section 631(a) does not prohibit "the recording of a conversation made by a participant rather than a third party." 52 Cal. App. 3d at 896, 897, 898. As in *Rogers*, Greenlight's use of a tool to record Plaintiff's communications with Greenlight does not violate CIPA § 631(a).

### F. The First Clause of § 631(a) Does Not Apply To Internet Communications.

Plaintiff cannot maintain a claim against Greenlight under the first clause of CIPA § 631(a) because it only imposes liability where a defendant "intentionally taps, or makes any unauthorized connection . . . with any *telegraph or telephone* wire, line, cable, or instrument . . . ." Cal. Penal Code § 631(a) (emphasis added). Courts have uniformly held that Internet communications—like Plaintiff alleges here—do not involve a "telephone" under the first clause of Section 631, and CIPA claims under that section should be dismissed when they are based on alleged online communications. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (first clause of CAP 631 did not "encompass[] email communications"); *In re Google Asst. Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (communications made through Google Assistant software not subject to the first clause of Section 631 because it does not pass "over 'any telegraph or telephone wire, line, cable, or instrument.'"); *Mastel*, 549 F. Supp. 3d at 1135–36 (no claim under the first clause of CIPA § 631(a) for mobile phone application "perform[ing] functions well beyond and unrelated to those of a telephone").

### G. Plaintiff's Consent Bars Her Claims

If the Court declines to consider Plaintiff's consent to the Privacy Statement pursuant to Rule 12(b)(1), Plaintiff's consent to Greenlight's recording of her Website

activity is judicially-noticeable and supports dismissal under Rule 12(b)(6). "Courts consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states' wiretapping statutes and related claims." *Silver*, 2021 WL 3191752, at *4 (dismissing CIPA and Wiretap Act claims based on consent to privacy policy that disclosed recording of communications); *see Smith v. Facebook, Inc.*, 745 F. App'x, 8 (9th Cir. 2018) (consent established for Wiretap Act claims where the "[t]erms and [p]olicies contain numerous disclosures related to information collection on third-party websites"); *Garcia v. Enter Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-37 (N.D. Cal. 2015) (dismissing CIPA claim where app provider's terms and privacy policy disclosed the collection of communications)).

The Website, which is subject to judicial notice, is almost entirely informative and passive in nature. RJN, Ex. 4. From the moment a visitor accesses the Website, the visitor is presented with the prominent disclosure in the middle of the page directing the visitor to "[l]earn how we collect and use your information by visiting our Privacy Statement," with a link to the Privacy Statement embedded within the disclosure *Id.*, Ex. 2. If a visitor elects to create an account, the visitor expressly assents to the Privacy Statement by clicking "Next" in the enrollment process immediately above a disclosure that informs the user "By clicking Next, you are accepting Greenlight's Terms of Service & Privacy Statement," RJN, Ex. 5. The Privacy Statement expressly discloses that Greenlight automatically collects "communications with [Greenlight] and information [users] provide" and "clicked pages and any other information [users] choose to provide to [Greenlight]." RJN, Ex. 3, p. 2, *see also id.*, Ex. 3, p. 1-3 (Greenlight collects "clicked pages and any other information about how you [use the Website]" "via cookies and other similar technologies").

Consent under CIPA and the Wiretap Act may be express or implied. *In re Google Inc.*, No. 13–MD–02430–LHK, 2013 WL 5423918, at *12-13 (N.D. Cal. Sept. 26, 2013); *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 265-266 (N.D. Cal. 2016). Here, both are present. First, Plaintiff had notice and opportunity to review the Privacy Statement immediately upon accessing the Website, which constitutes at least implied consent to

Greenlight's collection of her interactions on the Website by Greenlight including through its third-party service providers. "The critical question is whether the party whose communications were intercepted had adequate notice of the interception." *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016). Here, Plaintiff was on undisputed notice of Greenlight's practices, similar to a disclosure that a "call may be recorded," upon first visiting the Website. *Id.* ("In the typical implied in fact consent scenario, a party is informed that his call will be recorded, and he continues to use the communication system after receiving notice the communications are being intercepted"); *Jacome*, 2021 WL 3087860, at *7 (website disclosure "that explicitly warned [users] that 'by continuing to use [the] [W]ebsite, [Plaintiff] acknowledge[s] the use of cookies'" equivalent to "calling a customer service line and hearing 'Your call is being recorded for quality assurance purposes.'"); *In re Google Inc.*, 2013 WL 5423918, at *12-13 (consent implied where party has "adequate notice of the interception").

Second, if Plaintiff enrolled in Greenlight's services (which she in fact did, and the Court may properly consider pursuant to Greenlight's motion under Rule 12(b)(1)), she expressly consented to Greenlight's Privacy Statement in the enrollment process after she provided—if anything—non-actionable record information to initiate enrollment, such as a phone number, confirmation code, email address, and password. RJN, Ex. 5. Her express consent to Greenlight's recording of any substantive communications she claims to have provided thereafter bars her CIPA and Wiretap claims. *Smith*, 745 F. App'x at 8. Plaintiff has no claims for alleged eavesdropping against Greenlight.

## VII.  CONCLUSION

Based on the foregoing, Greenlight respectfully requests that the Court grant Greenlight's Motion to Dismiss the Complaint and deny Plaintiff leave to amend.

DATED: February 20, 2023          GREENBERG TRAURIG, LLP


By____*/s/ Rebekah S. Guyon*_____

Rebekah S. Guyon
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
GuyonR@gtlaw.com

*Attorneys for Defendant*
*Greenlight Financial Technology, Inc.*

26

DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS COMPLAINT