Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343

Daniel G. Shay (SBN 250548)
DanielShay@TCPAFDCPA.com
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

*Attorneys for Plaintiff
and The Putative Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN WRIGHT, individually and on behalf of others similarly situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>GREENLIGHT FINANCIAL TECHNOLOGY, INC.,<br><br>                    Defendant. | Case No: 3:22-CV-02025-AGS-NLS<br><br><u>CLASS ACTION</u><br><br>FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:<br><br>THE CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 631;<br><br>THE CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 632.7<br><br>JURY TRIAL DEMANDED |

Amended Class Action Complaint

## INTRODUCTION

1. Joan Wright ("Plaintiff"), individually and on behalf of all other similarly situated consumers ("Class Members"), brings this action for damages and injunctive relief against Greenlight Financial Technology, Inc. ("Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, related entities for violations of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 631 and 632.7, in relation to its aiding in the unauthorized tapping and recording of Plaintiff's and Class Members' communications on their cell phones and mobile devices.

2. Defendant did this through the use of "session replay" spyware that allowed Defendant's co-conspirator, FullStory, to tap, read, learn the contents of, record, use, disclose, analyze and make reports on Plaintiff's and Class Members' interactions on Defendant's website including mobile numbers entered, words and text typed and search terms used when browsing Defendant's website on cell phones and mobile devices.

3. The California State Legislature passed CIPA to protect the right of privacy of the people of California. CIPA is very clear in its prohibition against aiding in the unauthorized tapping of communications etc:

> "Any person who, by means of any machine, instrument, or contrivance, or any other matter, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable. Or instrument of any internal telephonic communication system, or who willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who **aids, agrees with, employs, or conspires** with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section" [violates this section]." Cal. Penal Code § 631(a) (emphasis

2

added)

4.    CIPA also prohibits recording cell phone communications without the consent of all parties:

> "Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.   If the person has been convicted previously of a violation of this section or of Section 631 , 632, 632.5, 632.6, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment."
>
> Cal. Penal Code § 632.7(a)

5.    Plaintiff brings this action for violation of California Penal Code §§ 631 and 632.7 which both have a private right of action providing for statutory damages of $5,000 for each violation under Cal. Pen. Code § 637.2(a)(1).

6.    As discussed in detail below, Defendant's co-conspirator FullStory utilized session replay spyware to tap and record Plaintiff's and Class Members' electronic communications without their knowledge or consent.

7.    Defendant embedded JavaScript computer code written by FullStory in the HTML code of Defendant's website.  Every time someone visited Defendant's website, the script deployed onto their cell phone or device for the purpose of watching and recording their interactions with Defendant's site.

8.    The spyware was active on multiple pages on Defendant's website, not just a one or two.  The spyware gave Defendant and FullStory a record of Plaintiff's interactions on Defendant's website.

9.    The spyware began doing its job the moment Plaintiff and Class Members visited Defendant's website.  Its use by Defendant allowed FullStory to tap, read, record,

Amended Class Action Complaint

and learn the contents of Plaintiff's and Class Members' interactions with Defendant's website immediately, including how Plaintiff and Class Members moved around the site, mobile numbers entered, mouse movements and clicks, keystrokes, search terms, words and text typed, information inputted into the website, and pages and content viewed while visiting the website.

10.     Defendant's co-conspirator, FullStory, intentionally tapped and made unauthorized connections to Plaintiff's and Class Members' electronic communications to read and understand movement on the website, as well as everything Plaintiff and Class Members did on those pages.

11.     After tapping Plaintiff's and Class Members' communications, FullStory used those communications to view in real-time users' entire visits to Defendant's website so as to and learn the contents of the communications. The surreptitious tapping, recording, and review of Plaintiff's and Class Members' communications is the electronic equivalent of "looking over the shoulder" of each visitor to the website.

12.     FullStory then used and disclosed the data it gained for its own business purposes.[1]

13.     With the aid of Defendant, FullStory made these unauthorized connections and recordings without the knowledge or consent of Plaintiff or Class Members.

14.     Any alleged consent occurred well after the tapping, monitoring and recording began.  The spyware becomes active instantaneously upon visiting the site. Even if Plaintiff later consented to its use, it would have occurred well after the fact. Such was the case in *Javier v. Assurance IQ, LLC* where the Ninth Circuit rejected retroactive consent for recording website users.  *Javier v. Assurance IQ, LLC*, DC No. 4:20-cv-02860-JSW

15.     "Technological advances[,]" such as Defendant's use of session replay technology, "provide 'access to a category of information otherwise unknowable' and

---

[1] https://www.fullstory.com/legal/terms-and-conditions/

Amended Class Action Complaint

'implicate privacy concerns' in a manner different from traditional intrusions as a 'ride on horseback' is different from a 'flight to the moon.'" *Patel v. Facebook, Inc.,* 932 F.3d 1264, 1273 (9th Cir. 2019) (quoting *Riley v. California*, 573 U.S. 373, 393 (2014)).

16.     Jonathan Cherki, the CEO of Contentsquare which is a major "session replay" spyware company – while discussing its acquisition of Clicktale – publicly exposed why companies like Defendant engage in learning the contents of visits to their websites: "The combination of Clicktale and Contentsquare heralds an unprecedented goldmine of digital data that enables companies to interpret and predict the impact of any digital element – including user experience, content, price, reviews and product – on visitor behavior[.]"[2]

17.     Mr. Cherki added that, "this unique data can be used to activate custom digital experiences in the moment via an ecosystem of over 50 martech partners. With a global community of customer and partners, we are accelerating the interpretation of human behavior online and shaping a future of addictive customer experience."[3]

18.     Unlike typical website analytics services that provide aggregate statistics, the session replay technology utilized by Defendant and FullStory is intended to record and playback individual browsing sessions as if someone is looking over the browser's shoulder with a video camera. The technology permits companies to view the interactions in live, real-time in addition to recording them.

19.     The extent and detail collected by the technology far exceeds consumers' expectations when visiting websites like Defendant's. The technology not only allows the tapping of a visitor's electronic communication with the website, but also allows Defendant and FullStory to create a detailed profile for each visitor to the site.

20.     Moreover, the collection of text entered, such as passwords and credit card numbers, allows sensitive personal information displayed on a page to be shared with

---

[2] https://www.prnewswire.com/news-releases/contentsquare-acquires-clicktale-to-create-the-definitive-global-leader-in-experience-analytics-300878232.html
[3] *Id*

Amended Class Action Complaint

others. This exposes website visitors to potential identity theft, online scams, and other unwanted behavior.

21.    In 2019, Apple warned application developers using "session replay" technology that they were required to disclose such action to their users, or face being immediately removed from the Apple Store: "Protecting user privacy is paramount in the Apple ecosystem. Our App Store Review Guidelines require that apps request explicit user consent and provide a clear visual indication when recording, logging, or otherwise making a record of user activity."[4]

22.    This is what Defendant and FullStory should have done.  They should have immediately informed Plaintiff and Class Members with a pop-up window that their website visits were being recorded and required "explicit user consent" and provided "a clear visual indication when recording, logging, or otherwise making a record of user activity."

23.    Consistent with Apple's concerns, countless articles have been written about the privacy implications of recording user interactions during a visit to a website, including:

(a) ***The Dark Side of 'Replay Sessions' That Record Your Every Move Online***, located at https://www.wired.com/story/the-dark-side-of-replay-sessions-that-record-your-every-move-online/.

(b) ***Session-Replay Scripts Disrupt Online Privacy in a Big Way***, located at https://www.techrepublic.com/article/session-replay-scripts-are-disrupting-online-privacy-in-a-big-way/;

(c) ***Are Session Recording Tools a Risk to Internet Privacy?*** located at https://mopinion.com/are-session-recording-tools-a-risk-to-internet-privacy/

(d) ***Session Replay is a Major Threat to Privacy on the Web***, located at https://www.itnews.com.au/news/session-replay-is-a-major-threat-to-

---

[4] https://techcrunch.com/2019/02/07/apple-glassbox-apps/

privacy-on-the-web-477720;

(e) ***Popular Websites Record Every Keystroke You Make and Put Personal Information and Risk***, located at https://medium.com/stronger-content/popular-websites-record-every-keystroke-you-make-and-put-personal-information-at-risk-c5e95dfda514; and

(f) ***Website Owners can Monitor Your Every Scroll and Click***, located at https://www.digitalinformationworld.com/2020/02/top-brands-and-websites-can-monitor-your-every-scroll-and-click.html

24.    In sum, Defendant and FullStory illegally tapped, made unauthorized connections to, read or learned the contents or meaning of Plaintiff's and Class Members' electronic communications, and recorded those communications.  Defendant infringed upon Plaintiff's and Class Members' rights to privacy codified in CIPA.

25.    All unlawful conduct alleged herein took place in California and all violations by Defendant were knowing, willful, and intentional.

26.    The use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

## PARTIES

27.    Plaintiff is a natural person and resident of the State of California and the County of San Diego.

28.    Defendant is a Delaware corporation with its principal place of business located in Georgia.

29.    At all times relevant herein Defendant conducted business in the State of California, in the County of San Diego, within this judicial district.

## JURISDICTION & VENUE

30.    This Court has federal subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because Plaintiff is a resident of California and seeks relief on behalf of California classes, which will result in all

7

Class Member belonging to a different state than Defendant who is a Delaware corporation with its principal place of business in Georgia.

31.   Plaintiff is requesting statutory damages of $5,000 per violation of Cal. Pen. Code §631 and 632.7, which when aggregated among a proposed class number in the hundreds of thousands, far exceeds the $5,000,000 threshold for federal court jurisdiction under CAFA.

32.   Therefore, both diversity jurisdiction and the damages threshold under CAFA are present, and this Court has federal subject matter jurisdiction.

33.   This Court has personal jurisdiction over Defendant because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in California. The privacy violations complained of herein resulted from Defendant's purposeful and tortious acts directed towards citizens of California, such as Plaintiff, while they were located within California. At all relevant times, Defendant did business over the internet with residents of California, including Plaintiff, and entered into contracts with residents of California for services. Defendant knew that its practices would directly result in real-time viewing and collection of information from California citizens while those citizens were engaged in commercial activity on Defendant's website. Defendant chose to benefit from marketing and selling its goods in California. It then viewed real-time data from the website visits initiated by Californians while located in California. The claims alleged herein arise from those activities.

34.   Defendant also knows that many users visit and interact with Defendant's website while they are physically present in California. Many Californians purchase services on Defendant's site and enter their California addresses.   Another way Defendant knows a consumer is located in California is through location-determining tools that track and analyze users' IP addresses, without requiring the user to manually input a physical address. The employment of automatic location services in this way means that Defendant is continuously aware that its website is being visited by people located in California to buy Defendant's products in California, and that such website

8

visitors are being tapped and recorded in violation of California statutory law, causing privacy harm to California citizens.

35.    In addition, Defendant included California-specific provisions in its Privacy Statement in recognition that California citizens would be using Defendant's website while in California and that such use, as well as Defendant's own conduct, was subject to California law.[5]

36.    Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein occurred within this judicial district; and (ii) Defendant conducted business within this judicial district at all times relevant.

### FACTUAL ALLEGATIONS

37.    Defendant owns and operates the following website: www.greenlight.com.

38.    Over the past year, Plaintiff and Class Members visited Defendant's website from cell phones and other mobile devices to research and retain its services.

39.    Plaintiff and Class Members were in California during each visit to Defendant's website.

40.    As soon as Defendant's site loaded on Plaintiff's mobile device, Plaintiff's device began sending and receiving electronic communications in the form of instructions to and from Defendant's computer servers utilized to operate its website. The commands were sent as messages indicating to Defendant what words and text were typed, any search terms entered (on the help page for example), and what content was being clicked, requested, and inputted by Plaintiff including the mobile number Plaintiff entered in the field "Enter mobile number" which is found throughout the site.[6]

41.    By using the spyware, Defendant and FullStory were able to learn much more about Plaintiff and class members including the pages and content they viewed, their scroll movements, words and text typed even if not fully entered, copy and paste actions, search terms even if not fully entered, mouse clicks and movements,

---

[5] https://privacy.greenlight.com/policies
[6] https://greenlight.com/

Amended Class Action Complaint

keystrokes, mobile numbers entered, and all other information related to the visit.

42.     Defendant responded to Plaintiff's and Class Members' electronic communications by supplying – through its website – the information requested by Plaintiff and Class Members. *Revitch v. New Moosejaw, LLC,* U.S. Dist. LEXIS 186955, at *3 (N.D. Cal. 2019) ("This series of requests and responses – whether online or over the phone – is communication.").

43.     Defendant and FullStory used session replay software which enabled it to see the screens of Plaintiff and Class Members while they were on Defendant's website.

44.     The "sessions" were tapped, recorded, and shared with or by, FullStory and possibly other third-party vendors conspiring with Defendant or FullStory.

45.     Defendant continuously operates at least one "session replay" JavaScript in its HTML code in partnership with the script's provider, FullStory, or another provider.

46.     Defendant installed FullStory's session replay spyware onto its servers and inserted the JavaScript into the HTML code of its website.

47.     When consumers visit Defendant's website, the JavaScript immediately loads onto their device, from Defendant's site, and is stored in their device's cache or temporary internet files.

48.     Like a parasite or a virus, the spyware then monitors and records communications the device sends to, and receives from, Defendant's servers while the consumer browses Defendant's site.

49.     The communications are still allowed to travel their normal path between the consumer's device and Defendant's servers, but the communications are tapped and copied and sent to the FullStory's servers as well.  Like traditional wiretapping, the communication still goes through, despite the tapping and recording.  The consumer is completely unaware of what is happening.

50.     FullStory played an active role in the tapping and recording.  Defendant did not simply purchase the spyware from the FullStory and use it without any

Amended Class Action Complaint

involvement from FullStory, which would be the case with a traditional tape recorder. Defendant licensed the software service from FullStory and agreed to be bound by its terms of use.[7]

51. FullStory played an active role in the use of its spyware by (1) creating and licensing the JavaScript to Defendant who inserted it into its HTML code (2) causing the  JavaScript to download onto Plaintiff's device when Plaintiff visited Defendant's site (3) using the script to tap and learn the contents of Plaintiff's communications to and from Defendant's site (4) sending copies of the communications to FullStory's servers (5) allowing Defendant, and potentially others, to access the sessions real time or later (6) using the data it gained for its own business purposes as shown in its Terms and Conditions.[8]

52. While browsing Defendant's site, Plaintiff's mobile browser sent "GET requests" to Defendant's server.  The server responded by sending HTML code to Plaintiff's mobile browser.  The browser interpreted the code to allow the website to appear on Plaintiff's screen.  Defendant's code also included JavaScript that told Plaintiff's browser to send another GET request to FullStory's server.  That server responded by sending its own code to Plaintiff's browser.  Once Plaintiff's browser loaded the code from FullStory, two things happened.  First, the code placed cookies on Plaintiff's browser so that Plaintiff's activity on the webpage had an associated visitor ID.  Second, the code told Plaintiff's browser to begin sending information to FullStory as Plaintiff navigated through Defendant's website, such as communicating that Plaintiff had searched for certain items.  FullStory could later use this information to identify which of Defendant's customers may be receptive to promotions.  *Popa v. Harriet Carter Gifts Inc.*, No. 21-2203 (3d Cir. 2022) describing the software.

53. This was all done at the direction of Defendant who procured FullStory to tap and record the communications.  The acts were done with the aid and agreement of

---

[7] https://www.fullstory.com/legal/terms-and-conditions/
[8] https://www.fullstory.com/legal/terms-and-conditions/

Amended Class Action Complaint

Defendant in conspiracy with the FullStory.

54.     Plaintiff and Class Members reasonably expected that visits to Defendant's website would be private and that neither Defendant nor FullStory, would be recording their communications.

55.     Plaintiff and Class Members had no idea that FullStory would be tapping, connecting to, or otherwise attempting to understand their communications with Defendant's website.  Defendant failed to present a pop-up disclosure or consent form alerting them that the visits were monitored and recorded by FullStory and Defendant at the time the site loaded onto their device.

56.     Even if it applied here, Defendant's Privacy Statement does not mention that visits to its site may be "monitored" or "recorded."  It makes no mention of "session replay" software or "FullStory."[9]  It certainly does not inform consumers that FullStory will "access and use Customer Data."[10]

57.     Plaintiff and Class Members reasonably believed their interactions with Defendant's website were private and would not be recorded or monitored for a later playback or monitored live while Plaintiff and Class Members were on its website.

58.     Any alleged consent was obtained after the fact.  The spyware loads immediately when visiting the site.  Even if Plaintiff subsequently consented to its use, it would have been afterward.  The Ninth Circuit addresses this issue in *Javier v. Assurance IQ, LLC* where it rejected retroactive consent for recording website users. *Javier v. Assurance IQ, LLC*, DC No. 4:20-cv-02860-JSW

59.     Neither Defendant nor FullStory are providers of wire or electronic communication services or are internet service providers.

60.     The use of session play spyware was not instrumental or necessary to the operation or function of Defendant's website or business.

61.     The use of session replay spyware to tap Plaintiff's electronic

_____

[9] https://privacy.greenlight.com/policies
[10] https://www.fullstory.com/legal/terms-and-conditions/

Amended Class Action Complaint

communications was not instrumental to Defendant's provision of any of its services. Rather, the level and detail of information surreptitiously collected by Defendant and its co-conspirator indicates that the only purpose was to gain an unlawful understanding of the habits and preferences of users of its website, and the information collected was solely for Defendant's and FullStory's own benefit.

62.     Defendant's use of session replay spyware to aid in the tapping and understanding of Plaintiff's and Class Members' electronic communications did not facilitate, was not instrumental, and was not incidental to the transmission of Plaintiff's and Class Members' electronic communications with Defendant's website.

63.     During one or more of Plaintiff's and Class Members' visits to Defendant's website, Defendant and FullStory utilized the session replay spyware to learn and understand the meaning of Plaintiff's and Class Members' electronic communications with Defendant's website, intentionally and contemporaneously, including mobile numbers entered, mouse clicks and movements, keystrokes, search terms, words and text typed, information input by Plaintiff, pages and content viewed, scroll movements, and copy and paste actions.

64.     The relevant facts regarding the full parameters of the communications Defendant aided FullStory to tap, learn and understand and the extent of how the connections occurred are solely within the possession and control of Defendant and FullStory.

65.     The session replay spyware utilized by Defendant is not a website cookie, standard analytics tool, web beacon, or other similar technology.

66.     Unlike harmless collection of an internet protocol address, the data collected by Defendant and FullStory identified specific information inputted and content viewed, and thus revealed personalized and sensitive information about Plaintiff's and Class Members' internet activity and habits.

67.     The electronic communications Defendant aided FullStory to tap consisted of content generated through Plaintiff's use, interaction, and communication with

13

Defendant's website relating to the substance, purport, and meaning of Plaintiff's and Class Members' communications with the website including mobile numbers entered.

68.   The electronic communications Defendant aided FullStory to read and understand were not generated automatically and were not incidental to other consumer communications.

69.   The spyware utilized by Defendant and FullStory allowed FullStory to learn the contents of communications of Plaintiff and Class Members in a manner that was undetectable.

70.   Defendant's spyware recorded Plaintiff's and Class Members' communications, then Defendant and FullStory analyzed the communications for business purposes.

71.   Defendant never sought consent, and Plaintiff and Class Members never provided consent, for the unauthorized access and reading and recording of their electronic communications prior to it occurring.

72.   Plaintiff and Class Members did not have a reasonable opportunity to discover the unlawful and unauthorized connections because Defendant did not disclose them or seek consent from Plaintiff or Class Members before it happened.

73.   As a software-as-a-service ("SaaS") company, FullStory provided services to Defendant as opposed to "goods" like tape recorders.

74.   FullStory used Plaintiff's communications for its own commercial benefit. The terms and conditions between Defendant and FullStory state;

> "Customer grants to FullStory a non-exclusive, royalty-free license to access and use Customer Data in order to provide the Services to Customer and as necessary to monitor and improve the Services."[11]

75.   Even if FullStory did not use the data for its own gain, it certainly had the capability to use it for its own gain and it could analyze and interpret the data.

76.   That being said, reading a use requirement into CIPA would add

---

[11] https://www.fullstory.com/legal/terms-and-conditions/

Amended Class Action Complaint

requirements that are not present.  In *Ribas v. Clark,* the California Supreme Court did not consider the intentions or use to which the eavesdropper put the information obtained.  Instead, the court emphasized the privacy concerns at issue having an "unannounced second auditor" listening to the call, when Section 631 concerns the "right to control the nature and extent of the firsthand dissemination of [their] statements." *Ribas v. Clark*, 38 Cal. 3d at 360-361 (1985)

77.   Plaintiff was completely unaware that FullStory was involved in any way and Plaintiff did not intend to communicate with FullStory.  Plaintiff has never heard of FullStory which is a separate entity from Defendant operating on its own.

78.   FullStory's presence and involvement in the scheme was unknown to Plaintiff.  FullStory was a second entity that received Plaintiff's communications simultaneously, or even before, Defendant. "Such secret monitoring denies the speaker an important aspect of privacy of communication – the right to control the nature and extent of the firsthand dissemination of his statements" as the California Supreme Court held in *Ribas v. Clark*, 38 Cal. 3d at 361 (1985)

79.   For the "party exception" to apply under Cal. Penal Code § 631(a), the "consent of all parties to the communication" must be present as worded in Cal. Penal Code § 631(a).  Here, FullStory's involvement was kept secret, so Plaintiff was not aware of "all parties to the communication."

80.   After looking at the legislative intent of CIPA, The *Ribas* court held that Cal. Penal Code § 631 "was designed to protect a person placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call.  *Ribas v. Clark*, 38 Cal. 3d (1985) citing 57 Cal. L. Rev. at p. 1202, fn. 120

81.   Cal. Penal Code § 631(a) does not mention to word "intercept" and interception is not an element of Cal. Penal Code § 631(a).  But even if a violation did require interception, that requirement would be met here since FullStory acquired the communications and came into possession of them.

82.   It is not a requirement that the communications are tapped "in transit" either.   Under CIPA 631, it is enough if the communications are "being sent from and received at a place within this state." *Ribas v. Clark*, 38 Cal. 3d (1985)

83.   Plaintiff alleges that the communications Plaintiff' device sent to Defendant often arrived at FullStory's servers before they arrived at Defendant's servers.

84.   For unlawful recording under Cal. Penal Code § 632.7, which is also alleged here, there is no party exception.   A party to the communication is liable for recording a communication without the consent of the other party as the California Supreme Court held in *Smith v. LoanMe Inc.*, 11 Cal. 5th 183 (2021).

85.   In *Ribas v. Clark*, the California Supreme Court stated; "the Privacy Act has long been held to prevent one party to a conversation from recording it without the other's consent." (*People v. Wyrick* (1978) 77 Cal. App. 3d 903, 909 [144 Cal. Rptr. 38]; *Forest E. Olson, Inc. v. Superior Court* (1976) 63 Cal. App. 3d 188, 191 [133 Cal. Rptr. 573].)

## STANDING

86.   Defendant's conduct constituted invasions of privacy because it disregarded Plaintiff's statutorily protected rights to privacy, in violation of CIPA.

87.   Defendant caused Plaintiff to (1) suffer invasions of legally protected interests. (2) The invasions were concrete because the injuries actually existed for Plaintiff and continue to exist every time Plaintiff visits Defendant's website. The privacy invasions suffered by Plaintiff and Class Members were real and not abstract. Plaintiff and Class Members have a statutory right to be free from tapping and recording of their communications. The tapping and recording were meant to secretly spy on Plaintiff to learn more about Plaintiff's behavior.   Plaintiff and Class Members were completely unaware they were being observed.   Plaintiffs' injuries were not divorced from concrete harm in that privacy has long been protected in the form of trespassing laws and the Fourth Amendment of the U.S. Constitution for example.   Like here, an

unreasonable search may not cause actual physical injury, but is considered serious harm, nonetheless. (3) The injuries here were particularized because they affected Plaintiff in personal and individual ways. The injuries were individualized rather than collective since Plaintiff's unique communications were examined without consent during different website visits on separate occasions. (4) The past invasions were actual and future invasions are imminent and will occur next time Plaintiff visits Defendant's website. Defendant and its co-conspirator continue to tap and record communications without consent. A favorable decision by this court would redress the injuries of Plaintiff and Class Members.

## TOLLING

88.     Any applicable statute of limitations has been tolled by the "delayed discovery" rule.  Plaintiff did not know, and had no way of knowing, that Plaintiff's information was tapped and recorded by FullStory, because Defendant kept this information secret.

## CLASS ACTION ALLEGATIONS

89.     Plaintiff brings this lawsuit as a class action on behalf of Plaintiff and Class Members of putative Classes under F.R.C.P. 23.

90.     Plaintiff proposes the following Classes, consisting of and defined as follows:

Class One (Cal. Penal Code § 631)
All persons in California whose communications were tapped by a person Defendant aided, agreed with, employed, or conspired to tap.

Class Two (Cal. Penal Code § 632.7)
All persons in California whose cellular communications were recorded by Defendant, or an entity Defendant assisted.

91.     Excluded from each Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the

17

Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to redefine each Class and to add subclasses as appropriate based on discovery and specific theories of liability.

92.   **Numerosity**: The Class Members are so numerous that joinder of all members would be unfeasible and impractical.  The membership of each Class is currently unknown to Plaintiff at this time; however, given that, on information and belief, Defendant accessed millions of unique mobile devices, it is reasonable to presume that the members of each Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

93.   **Commonality**: There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including, but not limited to:

- Whether Defendant aided FullStory to tap communications with Class Members;
- Whether Defendant aided FullStory to read or learn the contents of communications with Class Members;
- Whether Defendant has a policy of aiding in the tapping or reading of communications of Class Members;
- Whether Defendant's policy or practice of aiding in the tapping or reading of Class Members communications constitutes a violation of Cal. Penal Code § 631;
- Whether Defendant recorded, or assisted FullStory to record, communications with Class Members;
- Whether Defendant has a policy of recording, or assisting FullStory to record, communications of Class Members;
- Whether Defendant's policy or practice of recording, or assisting FullStory to record, Class Members' communications constitutes

18

a violation of Cal. Pen. Code § 632.7;

- Whether Class Members were aware of Defendant's session replay spyware and had consented to its use.

94.  **Typicality**: Plaintiff's and Class Members' electronic communications were tapped and recorded without their consent and the injuries are typical to all Class Members.

95.  Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant's co-conspirator, illegally tapped and recorded Plaintiff and Class Members' electronic communications, and other sensitive personal data from their mobile devices, and invaded the privacy of Plaintiff and Class Members.

96.  **Adequacy**: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom Plaintiff is similarly situated, as demonstrated herein.  Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiff's attorneys, the proposed class counsel, are well versed in the rules governing class action discovery, certification, and settlement.  In addition, Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. The proposed class counsel is experienced in handling claims involving consumer actions and violations of CIPA.  Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.  Plaintiff and proposed class counsel are ready and prepared for that burden.

97.  **Predominance**: The questions of law or fact in this case are common to all Class Members and predominate all their claims. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to each Class rather than individual to its members.

98.  **Superiority**: A class action is a superior method for the fair and efficient

adjudication of this controversy because:

a.    Class-wide damages are essential to induce Defendant to comply with California law.

b.    Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.

c.    Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

d.    Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

e.    Class action treatment is manageable because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would endanger.

f.    Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.

99.    Plaintiff and Class Members have suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods because as individual Class Members have no way of discovering that Defendant tapped and recorded Class Member's electronic communications without their knowledge or consent.

100.    Each Class may also be certified because:

• The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish

incompatible standards of conduct for Defendant;

- The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

- Defendant has acted, or refused to act, on grounds generally applicable to each Class, thereby making appropriate final and injunctive relief with respect to the members of each Class as a whole.

101.   This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

102.   The joinder of Class Members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.  The Class Members can be identified through Defendant's records.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT
### CALIFORNIA PENAL CODE § 631

103.   To establish liability under section 631(a), a plaintiff need only establish that a defendant, or its co-conspirator, "by means of any machine, instrument, contrivance, or in any other manner" does any of the following:

Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

***Or***

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or

meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

104.    Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *Matera v. Google Inc*., 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc*., 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, --- F.3d --- 2020 WL 1807978 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

105.    The session replay spyware constitutes a "machine, instrument, contrivance, or . . . other manner" used to engage in the prohibited conduct at issue here.

106.    By using the session replay spyware to tap, track, record, and attempt to learn the contents of Plaintiff's and California Class Members' electronic communications, Defendant intentionally aided in the tapping, electrotonically or otherwise, the lines of internet communication of Plaintiff and Class Members.

107.    By utilizing the session replay spyware, Defendant's co-conspirator willfully and without consent, read or attempted to read or learn the contents or meaning

of electronic communications of Plaintiff and putative California Class Members, while the electronic communications were in transit or passing over a wire, line or cable or were being sent from or received at a place in California with the aid of Defendant.

108.   Plaintiff and Class Members did not consent to any of Defendant's, or the FullStory's actions, in implementing these unauthorized connections, nor have Plaintiff or Class Members consented to Defendant's intentional access, interception, reading, learning, and collection of Plaintiff's and California Class Members' electronic communications.

109.   Defendant aided FullStory to tap Plaintiff's and California Class Members' electronic communications when they accessed Defendant's website from within the State of California.

110.   Plaintiff and California Class Members did not know FullStory was engaging in such tapping and therefore could not provide consent to have any part of their electronic communications tapped.

111.   Plaintiff and Class Members were completely unaware that Defendant had aided FullStory to tap or learn the contents of their electronic communications until well after the fact and were therefore unable to consent.

112.   Neither Defendant nor FullStory advised Plaintiff or Class Members that any part of their electronic communications with Defendant's website would be tapped etc.

113.   Defendant aided FullStory in tapping, connecting to, intercepting, accessing, taking and using Plaintiff's and the California Class Members' communications in violation of Cal. Penal Code § 631(a).

114.   Defendant aided FullStory in willfully and without consent reading or learning the contents or meaning of Plaintiff and Class Members' communications while in transit or passing over a wire, line or cable in violation of Cal. Penal Code § 631(a).

115.   Defendant aided FullStory in using, or attempting to use, or communicate

the information it intercepted in violation of Cal. Penal Code § 631(a).

116.   Defendant aided, agreed with, employed, or conspired to unlawfully do, or permit, or caused the unlawful acts above in violation of Cal. Penal Code § 631(a).

117.   Plaintiff and Class Members are entitled to statutory damages of $5,000 per violation of Cal. Pen. Code § 631(a) pursuant to Cal. Pen. Code § 637.2(a)(1).

118.   Plaintiff's counsel is entitled to attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

### SECOND CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT
### CALIFORNIA PENAL CODE § 632.7

119.   Defendant used session replay spyware to surreptitiously record the communications of Plaintiff and Class Member when they visited Defendant's website via their cell phones and other mobile devices.

120.   Defendant assisted FullStory to record the communications of Plaintiff and Class Members when they visited Defendant's website with their cell phones and other mobile devices.

121.   Defendant had a policy of not advising or warning Plaintiff and Class Members that it was using session replay spyware to record, or assist to record, their cellular communications with Defendant's website until after it happened.

122.   Defendant did not obtain consent of Plaintiff and Class Members prior to the recording, or assisting in the recording, of their cellular communications.

123.   Defendant's conduct violated Cal. Pen. Code § 632.7(a).

124.   Plaintiff and Class Members are entitled to statutory damages of $5,000 per violation of Cal. Pen. Code § 632.7(a) pursuant to Cal. Pen. Code § 637.2(a)(1).

125.   Plaintiff's counsel is entitled to attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class Members pray that judgment be entered

Amended Class Action Complaint

against Defendant, and that Plaintiff and Class Members be awarded the following:

- Certify the Classes as requested herein;
- Appoint Plaintiff to serve as the Class Representative for the Classes;
- Appoint Plaintiff's Counsel as Class Counsel in this matter;
- $5,000 per violation of Cal. Pen. Code §§ 631 and 632.7 to each Class Member pursuant to Cal. Pen. Code § 637.2(a)(1);
- Reasonable attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5;
- Injunctive relief to prevent the further violations of Cal. Pen. Code §§ 631, 632 and 632.7;
- An award of costs to Plaintiff; and
- Any other relief the Court may deem just and proper including interest.

## TRIAL BY JURY

126.   Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff and Class Members are entitled to, and demand, a trial by jury.

Respectfully submitted,

**SWIGART LAW GROUP**

Date:  March 20, 2023          By:     *s/ Joshua Swigart*
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com
Attorneys for Plaintiff

**LAW OFFICE OF DANIEL G. SHAY**

Date:  March 20, 2023          By:     *s/ Daniel Shay*
Daniel G. Shay, Esq.
DanielShay@TCPAFDCPA.com
Attorney for Plaintiff

Amended Class Action Complaint