GREENBERG TRAURIG, LLP
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

Attorneys for Defendant
Greenlight Financial Technology, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN WRIGHT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GREENLIGHT FINANCIAL TECHNOLOGY, INC.,<br><br>Defendant. | CASE NO.  3:22-cv-02025-AGS-NLS<br>Assigned to Hon. Andrew G. Schopler<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(2), 12(b)(3) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declaration of Ashley Noto; Request for Judicial Notice; Proposed Order]<br><br>Action Filed:        Dec. 20, 2022<br><br>Date:        May 12, 2023<br>Time:        2:00 p.m. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS:

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 12, 2023 at 2:00 p.m., Defendant Greenlight Financial Technology, Inc. ("Greenlight") will and hereby does respectfully move for an order dismissing Plaintiff Joan Wright's ("Plaintiff") First Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of an Article III injury in fact, 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for improper venue, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

This motion is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities in support thereof, the concurrently filed Declaration of Ashley Noto, the concurrently filed Request for Judicial Notice, and all pleadings and papers on file in this action, and such other written or oral argument as may be properly presented to the Court at the hearing.

Respectfully submitted,

DATED:  April 4, 2023                    GREENBERG TRAURIG, LLP


By____*/s/ Rebekah S. Guyon*_____
      Rebekah S. Guyon

      Attorneys for Defendant
      Greenlight Financial Technology, Inc.

1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................1

II.     FACTUAL BACKGROUND.................................................3

    A.    Facts Relevant To The Court's Lack Of Personal Jurisdiction.....................3
    B.    Greenlight's Disclosures Regarding Its Collection Of Website Activity ...........................................................4
    C.    Plaintiff's Claims ..................................................5

III.    THE COURT LACKS PERSONAL JURISDICTION OVER GREENLIGHT ...................................................................6

    A.    Standards For Motions To Dismiss Pursuant To Rule 12(b)(2) ...................6
    B.    Greenlight Is Not Subject To Specific Jurisdiction In California.................7

IV.     VENUE IS IMPROPER ....................................................10

    A.    Standards For Motions To Dismiss Pursuant To Rule 12(b)(3) .................11
    B.    The Court Should Dismiss Plaintiff's Claims For Improper Venue.............11

V.      PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT ........12

    A.    Standards For Motions To Dismiss Pursuant To Rule 12(b)(1) ...................12
    B.    Constitutional Requirements For Standing ....................................12
    C.    Plaintiff Has Not Alleged A Concrete Harm ..................................13
    D.    Plaintiff Cannot Establish A Concrete Harm.................................15

VI.     PLAINTIFF HAS NOT STATED A PLAUSIBLE CLAIM ...........................16

    A.    Standards For Motions To Dismiss Pursuant To Rule 12(b)(6) ...................16
    B.    Plaintiff Does Not Plausibly Allege An "Interception."................17
    C.    Plaintiff Has Not Alleged That Greenlight Acquired Any Contents. ...........19
    D.    § 631(a) Does Not Apply To Greenlight Recording Its Own Conversations. ..................................................19
    E.    The First Clause of § 631(a) Does Not Apply To Internet Communications.................................................22
    F.    § 632.7 Only Applies To Communications Between Two Telephones........22
    G.    Plaintiff's Consent Bars Her Claims ........................................24

VII.    CONCLUSION.....................................................25

i

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AMA Multimedia, LLC v. Wanat,*
    970 F.3d 1201 (9th Cir. 2020) ..............................................................1, 6, 8

*Arisha Byars v. Hot Topic, Inc.,*
    No. EDCV221652JGBKKX, 2023 WL 2026994 (C.D. Cal. Feb. 14,
    2023) .........................................................................................................3, 23

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................16, 17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).......................................................................................17

*Bogart, LLC v. Corinthian, Inc.,*
    No. CV1107665GAFPLAX, 2012 WL 13009154 (C.D. Cal. May 3,
    2012) ..............................................................................................................11

*Brodsky v. Apple Inc.,*
    445 F. Supp. 3d 110 (N.D. Cal. 2020).......................................................2, 19

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 105 S. Ct. 2174 (1985)............................................................8

*Calder v. Jones,*
    465 U.S. 783 (1984).........................................................................................7

*Campbell v. Facebook Inc.,*
    315 F.R.D. 250 (N.D. Cal. 2016)...................................................................24

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014).........................................................................................7

*Dohrmann v. Intuit, Inc.,*
    823 Fed. Appx. 482 (9th Cir. Aug. 11, 2020)...............................................15

*Duck Dive LP v. Heydari,*
    No. 13-cv-1477-BTM (BLM), 2013 WL 5724050 (S.D. Cal. Oct. 21,
    2013) ..............................................................................................................11

*Eisenberg v. Bbva United States,*
    No. 3:20-cv-2368-L-AHG, 2021 WL 5177773 (S.D. Cal. July 12, 2021)...................13

ii

## TABLE OF AUTHORITIES

*Ellsworth v. Schneider Nat'l Carriers, Inc.*,
No. 5:20-CV-01699-SB-SP, 2021 WL 6102514 (C.D. Cal. Oct. 28, 2021) ..........13, 14

*In re Facebook, Inc., Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ...................................................................................21

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...............................................................16, 24

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ...................................................................22

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ...................................................................................19

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ...............................................3, 19, 20, 21

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) .................................................................................................7

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ..................................................................14

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ....................................25

*Kelly v. Echols, M.D.*,
No. CIVF05118AWISMS, 2005 WL 2105309 (E.D. Cal. Aug. 30, 2005) ................11

*Knuttel v. Omaze, Inc.*,
572 F. Supp. 3d 866 (N.D. Cal. 2021) ...................................................................12

*Larroque v. First Advantage LNS Screening Sols., Inc.*,
No. 15-CV-04684-JSC, 2016 WL 4577257 (N.D. Cal. 2016) .............................2, 16

*Lee v. Netgain Tech.*,
LLC, No. 21CV1144-LL-MSB, 2022 WL 993552 (S.D. Cal. Apr. 1,
2022) ...........................................................................................................6, 7, 8, 10

*Licea v. Cinmar, LLC*,
CV 22-6454-MWF, 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) ................21, 22, 23

*Marek v. Molson Coors Beverage Co.*,
580 F. Supp. 3d 848 (N.D. Cal. 2022) ...................................................................10

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) .................................................................................7

*Massie v. Gen. Motors Co.*,
2021 WL 2142728 (2021) ....................................................................................9, 10

iii

**TABLE OF AUTHORITIES**

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................22, 23

*Matera v. Google Inc.*,
   No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ...................22

*Mavrix Photo Inc. v. Brand Techs. Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ...............................................6, 7, 8, 9

*Myers v. Bennett L. Offs.*,
   238 F.3d 1068 (9th Cir. 2001) .............................................................9

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
   2016 WL 4886933 (S.D. Cal. Sept. 15, 2016)............................................25

*Patao v. Equifax, Inc.*,
   No. CV 19-00677 JMS-WRP, 2020 WL 5033561 (D. Haw. Aug. 25, 2020) ...........................................................................10

*Popa v. Harriet Carter Gifts, Inc.*,
   52 F. 4th 121 (3d Cir. 2022) ...........................................................2, 18

*Powell v. Union Pacific Railroad Co.*,
   864 F. Supp. 2d 949 (E.D. Cal. 2012) ..................................................20

*Quigley v. Yelp, Inc.*,
   No. 17-CV-03771-RS, 2018 WL 7204066 (N.D. Cal. 2018)................................18

*Rahman v. Marriott Int'l, Inc.*,
   No. 8:20-cv-00654, 2021 WL 346421 (C.D. Cal. Jan. 12, 2021) ..................14

*Revitch v. New Moosejaw, LLC*,
   Case No. 18-cv-06827, 2019 WL 5485300 (N.D. Cal. Oct. 23, 2019)................20, 21

*Rodriguez v. Google LLC*,
   No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .........................18

*Rosenow v. Facebook, Inc.*,
   No. 19-CV-1297-WQH-MDD, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ...................................................................2, 17, 18

*Sacco v. Mouseflow, Inc.*,
   No. 220CV02330TLNKJN, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ...................................................................7, 8

*Safe Air For Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ..........................................................12

*Santana v. Take-Two Interactive Software, Inc.*,
   717 F. App'x 12 (2d Cir. 2017) .........................................................16

iv

**TABLE OF AUTHORITIES**

*Scott v. Breeland*,
   792 F.2d 925 (9th Cir. 1986) ............................................................... 12

*Silver v. Stripe Inc.*,
   No. 20-CV-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ........................ 16, 24

*Smith v. Facebook, Inc.*,
   745 F. App'x 8 (9th Cir. 2018) ..................................................... 3, 15, 24

*Smith v. Maryland*,
   442 U.S. 735 (1979) ......................................................................... 14

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ..................................................................... 13

*St. Louis Heart Ctr., Inc. v. Nomax, Inc.*,
   899 F.3d 500 (8th Cir. 2018) ............................................................... 16

*Superama Corp. v. Tokyo Broad. Sys. Television, Inc.*,
   830 F. App'x 821 (9th Cir. 2020) .......................................................... 12

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ........................................................... 2, 13, 14, 15

*Underhill v. Kornblum*,
   2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ................................................ 17

*United States v. Borowy*,
   595 F.3d 1045 (9th Cir. 2010) ............................................................. 14

*Voodoo SAS v. SayGames LLC*,
   No. 19-CV-07480-BLF, 2020 WL 3791657 (N.D. Cal. July 7, 2020) ...................... 8, 9

*Walden v. Fiore*,
   571 U.S. 277 (2014) ..................................................................... 8, 10

*Warren v. Fox Fam. Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ............................................................. 12

*Winner v. Kohl's Dep't Stores, Inc.*,
   No. CV 16-1541, 2017 WL 3535038 (E.D. Pa. 2017) .......................................... 16

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ......................................................... 2, 19

**State Cases**

*In re Google Inc.*,
   No. 13–MD–02430–LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........... 24, 25

**TABLE OF AUTHORITIES**

*Jacome v. Spirit Airlines Inc.*,
  No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ............................................................................................. 19, 25

*People v. Black*,
  32 Cal. 3d 1 (1982) ................................................................................ 23

*People v. Nakai*,
  183 Cal. App. 4th 499 (2010) .............................................................. 14

*Ribas v. Clark*,
  38 Cal. 3d 355 (Cal. 1985) ................................................................... 19

*Ribas v. Clark*,
  696 P.2d 637 (Cal. 1985) ...................................................... 17, 18, 22

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975) ........................................................ 17, 20

*Smith v. LoanMe, Inc.*,
  11 Cal.5th 183 (2021) ........................................................................... 23

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (Ct. App. 1979) ................................................ 20

**Federal Statutes**

18 U.S.C. § 2510(4) ...................................................................................... 17

18 U.S.C. § 2510(8) ...................................................................................... 19

28 U.S.C. § 1391 ............................................................................................. 1

28 U.S.C. § 1391(b) ..................................................................................... 11

28 U.S.C. § 1391(b)(1) ............................................................................... 12

28 U.S.C. § 1391(b)(2) ........................................................................ 11, 12

**State Statutes**

Cal. Pen. Code § 631 ........................................... 3, 17, 19, 20, 22, 23

Cal. Pen. Code § 631(a) .......................................... 2, 17, 19, 20, 22

Cal. Pen. Code § 632 ................................................. 17, 19, 20, 22, 23

Cal. Pen. Code § 632.7 ............................................................ 3, 22, 23, 24

Cal. Pen. Code § 632.7(a) ...................................................................... 3, 22

Cal. Pen. Code § 633 ................................................. 17, 19, 20, 22, 23

vi

**TABLE OF AUTHORITIES**

Cal. Pen. Code § 633.02.................................................................17, 19, 20, 22, 23

Cal. Pen. Code § 633.05.................................................................17, 19, 20, 22, 23

Cal. Pen. Code § 633.5..................................................................................23

Cal. Pen. Code § 633.6...................................................................17, 19, 20, 22, 23

Cal. Pen. Code § 633.8..................................................................................23

Cal. Pen. Code § 636....................................................................................23

Cal. Pen. Code § 637....................................................................................23

Cal. Pen. Code § 637.2..................................................................................23

Cal. Pen. Code § 638....................................................................................23

Cal. Pen. Code § 638.53.................................................................................23

Cal. Pen. Code § 638.54.................................................................................23

Cal. Pen. Code § 638.55.................................................................................23

**Rules**

Fed. R. Civ. P. 8.........................................................................................2

Fed. R. Civ. P. 12(b)(1)................................................................................25

Fed. R. Civ. P. 12(b)(2)..............................................................................6, 10

Fed. R. Civ. P. 12(b)(6)...............................................................................3, 24

Fed. R. Civ. P. 15........................................................................................1

**TABLE OF AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff is trying to create a privacy claim against Greenlight based on its receipt of information she voluntarily provided on Greenlight's website, www.greenlight.com (the "Website"). Plaintiff claims that she visited the Website, input her mobile number and may have clicked on other content or entered search terms. FAC ¶ 40. It is Greenlight's alleged recording of this basic Website access with the use of software provided by FullStory that Plaintiff contends constitutes an unlawful wiretap. FAC ¶¶ 43-44, 69.

Glaringly, in her amended complaint—filed a week late under Fed. R. Civ. P. 15— Plaintiff still fails to acknowledge that she expressly consented to the very practice she complains of—Greenlight's alleged use of "technology that stores or collects information sent to us" including her "activities within [the Website]." Declaration of Ashley Noto ("Noto Decl.") ¶¶ 21-23, Ex. 2 at 4; Request for Judicial Notice ("RJN"), Ex. 3 at 2, 3. While Plaintiff complains that session replay software allowed Greenlight to record her interactions upon first accessing the site, she does not allege, and it is not plausible to infer, that she provided any communications to Greenlight before she consented to its recording. Plaintiff cannot establish Article III standing or maintain a California Invasion of Privacy Act ("CIPA") claim based on conduct she consented to. For these and multiple other reasons, her claims should be dismissed.

As a threshold matter, Greenlight is not subject to personal jurisdiction in California and the Southern District of California is an improper venue for Plaintiff's claims. The only connection that Plaintiff alleges between Greenlight and her claims in California is her own unilateral decision to use Greenlight's Website, which is not targeted to California but available nationwide and does not confer personal jurisdiction over Greenlight here. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020). Similarly, Plaintiff's own conduct of allegedly accessing the Website within this District—and not any conduct of Greenlight's—does not establish proper venue under 28 U.S.C. § 1391. *Reis v. Fifth Third Bank,* No. 8:20-cv-01189-KES, 2020 WL 7062398, at *4 (C.D. Cal. Oct. 2, 2020).

Even if personal jurisdiction and venue were established, Plaintiff's claims still fail because she has not and cannot allege an Article III injury in fact. The only harm that Plaintiff claims is a procedural violation of CIPA, which the Supreme Court has made clear is not a concrete harm sufficient to maintain Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Moreover, Plaintiff expressly consented to Greenlight's recording of her interactions on the Website, and she cannot suffer an invasion of privacy for conduct that she agreed to. *See Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-CV-04684-JSC, 2016 WL 4577257, at *5 (N.D. Cal. 2016).

Thus, dismissal is proper for multiple reasons without considering the merits of Plaintiff's claims. But on the merits, her claims fail.

<u>First</u>, CIPA prohibits only the *interception* of the *contents* of a communication, and Plaintiff alleges neither. An unlawful "interception" occurs only when a communication is acquired while "in transit." Cal. Penal Code § 631(a). Apparently in an attempt to remedy her deficient allegations of interception in the FAC, Plaintiff lifts an entire paragraph from a Third Circuit case involving a different website, different session replay provider, and after full discovery was completed ostensibly as facts showing how Greenlight used FullStory here. FAC ¶ 52 (citing and quoting from *Popa v. Harriet Carter Gifts, Inc.*, 52 F. 4th 121, 125 (3d Cir. 2022)). Suffice to say that out-of-circuit precedent addressing an entirely different factual scenario is not a substitute for Plaintiff's obligation under Rule 8 to allege sufficient facts to support her own claims. Apart from copying from *Popa*, Plaintiff's allegations of an interception are wholly conclusory. *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQH-MDD, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020).

The "contents" of a communication under CIPA is limited to information showing its "substance, purport, or meaning." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). "[R]ecord information," *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014), that only conveys characteristics of a message, such as the "mouse movements and clicks, keystrokes, search items, words and text typed . . . and pages and content viewed" that Plaintiff claims Greenlight acquired here is not actionable. FAC ¶ 9. Nor is it plausible

DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

that Plaintiff provided substantive information recorded by Greenlight on the Website given its informative, and not interactive, nature. RJN, Ex. 4.

Second, Plaintiff's CIPA claim fails because § 631 does not prohibit a party to a communication—like Greenlight—from recording it. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). While Plaintiff attempts to paint FullStory as an unauthorized third-party, as opposed to a tool that Greenlight lawfully used to record its own communications, the facts she alleges do not suggest that FullStory did anything other than assist Greenlight in its own recordings on the Website. She cites FullStory's Terms & Conditions for the proposition that FullStory used Greenlight's data for its own commercial benefit, but the terms state that FullStory will use Greenlight's data to improve the services it provides *to Greenlight*. FAC ¶ 74. This is not a wiretap. *Graham*, 533 F. Supp. 3d at 831.

Third, Plaintiff's § 632.7 claim fails because under the statute's plain language, it only applies to the recording of a communication between *two telephones*, not a smartphone and a server supporting a website, as Plaintiff alleges here. Cal. Penal Code § 632.7(a). *Arisha Byars v. Hot Topic, Inc.*, No. EDCV221652JGBKKX, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023).

Fourth, the fact that a visitor to the Website must either implicitly or expressly consent to Greenlight's Privacy Policy—which discloses the recording she complains of— is properly considered under Rule 12(b)(6), and dispositive of Plaintiff's claims. *See* RJN, Ex. 4. *Smith v. Facebook, Inc.*, 745 F. App'x, 8 (9th Cir. 2018).

## II.    FACTUAL BACKGROUND

### A. Facts Relevant To The Court's Lack Of Personal Jurisdiction

Greenlight is a Delaware corporation headquartered in Atlanta, Georgia. FAC ¶ 23; Declaration of Ashley Noto ("Noto Decl.") ¶ 3. As of February 20, 2023, Greenlight has approximately 382 full time employees, 223 of whom are in Georgia and only 40 of whom are in California. *Id*. ¶ 4. Greenlight's California employees do not control Greenlight's use of session replay software, from which Plaintiff's claims arise. *Id*. ¶ 12. Greenlight has a *de minimis* physical presence in California. It rents a WeWork space in San Jose,

3

California, that its local employees may use—but are not obligated to use. No more than twenty-two employees use the office space from time to time. *Id.* ¶ 5. Greenlight does not rent any server space for customer serving instances of the Website within California. *Id.* ¶ 8. Greenlight has no other physical presence in California. *Id.* ¶ 6. Greenlight's Website is accessible nationwide. Noto Decl. ¶ 11. In advertising its services online, Greenlight has never targeted California, whether by email or other digital advertisements.[1] *Id.* ¶ 9.

**B. Greenlight's Disclosures Regarding Its Collection Of Website Activity**

The Greenlight Website is predominantly informational in nature, containing a variety of links that users can click on to learn more about Greenlight's services. RJN, Ex. 1. Front and center on the homepage of the Website is a prominent disclosure regarding Greenlight's Privacy Practices:



Noto Decl., ¶ 16; RJN, Ex. 4. The disclosure informs all visitors: "Learn how we collect

---

[1]    In two limited instances, Greenlight's promotional materials were displayed in-person to residents of Northern California. *Id.* In 2022 Greenlight took out a one-page ad on page 92 of a program for a single swim meet for the East Bay Swim League in Fremont, California. *Id.* No more than 500 individuals attended the meet and could have received the program. *Id.* Also in 2022, Greenlight sponsored a cricket team on which an employee played in Mountain House, California, pursuant to which Greenlight's logo was displayed on the team's jerseys. *Id.* No more than 500 families participate in the league. *Id.*.

and use your information by visiting our <u>Privacy Statement</u>." *Id*. The phrase "<u>Privacy Statement</u>" embeds a hyperlink to Greenlight's Privacy Statement. This disclosure is conspicuously located in the middle of the page below a field where visitors may enter their mobile number to begin enrollment for Greenlight's services. *Id*.

Anyone who enrolls in Greenlight's services agrees to its Terms of Service and Privacy Statement. A visitor *must* indicate his or her assent during the enrollment process by clicking "Next" above the statement "By clicking next, you are accepting Greenlight's <u>Terms of Service</u> &  <u>Privacy Statement</u>." Noto Decl. ¶ 21; RJN, Ex. 5.

Plaintiff enrolled in Greenlight's services on June 16, 2022. Noto Decl. ¶ 25. She therefore expressly assented to Greenlight's Privacy Statement, which explicitly informed her that Greenlight "collects . . . your activities within Greenlight Services, including the portions of the Website . . . you access," and including through the use of "third-party service providers" and their "technology." Noto Decl. ¶ 21-23, Ex. 2 at 4.[2]

**C. Plaintiff's Claims**

Plaintiff is a resident of San Diego, California. FAC ¶ 27. Plaintiff allegedly visited the Website at undisclosed times "[o]ver the past year" on her cell phone or mobile device.

---

[2]    "Greenlight's Services" is defined as "services, products, features, functions, technologies, or content offered on the Website, the Application, and all related sites and applications, regardless of how accessed, including by computer, mobile phone, tablet or any other device." Noto Decl., Ex. 1, p. 1.

The Privacy Statement was updated on August 3, 2022 and continues to the present day that Greenlight collects:

**Internet and usage information**: such as internet protocol (IP) addresses, type of browser, Internet Service Provider (ISP), clicked  pages and any other information about how you and your family use the Service.

This information is collected from a "variety of sources," including:

 . . .

Like many digital platforms, Greenlight and our third-party service providers may collect certain information automatically using cookies and other similar technologies to help us manage, improve and customize our features and functionality.

Noto Decl., Ex. 3, p. 2, 3.

DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Id.* ¶ 38. Plaintiff's claims arise from Greenlight's alleged use of session replay software provided by FullStory to record her Website interactions. *Id.* ¶ 70. Plaintiff describes session replay as a "JavaScript computer code" "embedded" within the Website that allowed Greenlight to record her pages and content viewed, scroll movements, words and text typed, copy and paste actions, search terms, mouse clicks and movements, keystrokes, and mobile number entered. *Id.* ¶¶ 7, 40, 41. She fails to allege the content of any communication Greenlight supposedly recorded from her. *Id.*

Greenlight's Website is almost entirely informative and *not* interactive in nature. RJN, Ex. 4. While it is true that Greenlight has used session replay on the Website, it does not operate as Plaintiff contends. Visitors may provide information if they elect to enroll in Greenlight's services (as Plaintiff did) Greenlight does *not* use session replay to record information input during the account enrollment process, and it does not use session replay to record visitor's IP addresses, phone numbers, or locations. Noto Decl. ¶¶ 14, 15.

Plaintiff labels Greenlight's use of session replay an invasion of her privacy, but she does not claim that she provided anything private on the Website, let alone that that information was unlawfully collected by Greenlight with the use of session replay software (which it wasn't). FAC ¶¶ 86-87; Noto Decl. ¶ 14. She does not allege any specific harm.

## III.  THE COURT LACKS PERSONAL JURISDICTION OVER GREENLIGHT

### A. Standards For Motions To Dismiss Pursuant To Rule 12(b)(2)

Plaintiff's claims should be dismissed because Greenlight is not subject to personal jurisdiction in California. "[P]laintiff[] bear[s] the burden of demonstrating that jurisdiction is appropriate." *Lee v. Netgain Tech.*, LLC, No. 21CV1144-LL-MSB, 2022 WL 993552, at *2 (S.D. Cal. Apr. 1, 2022). When ruling on a motion to dismiss pursuant to Rule 12(b)(2), the court resolves all contested facts in plaintiff's favor, but a plaintiff cannot establish jurisdiction when faced with contrary evidence by relying on the complaint alone. *Id.* (citing *Mavrix Photo Inc. v. Brand Techs. Inc.*, 647 F.3d 1218 (9th Cir. 2011)). "[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." *AMA Multimedia*, 970 F.3d at 1207.

Personal jurisdiction may be either general or specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408,414 nn.8-9 (1984). "General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state 'are so constant and pervasive as to render it essentially at home' in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 122 (2014)). "Specific jurisdiction" exists where a claim arises directly from a defendant's contacts with the forum. *Helicopteros,* 466 U.S. at 414 n.8.

The only issue before the Court is whether Greenlight is subject to specific jurisdiction, since Plaintiff does not assert that Greenlight, a Delaware entity with its principal place of business in Georgia, is subject to general jurisdiction here. FAC ¶ 28.

### B. Greenlight Is Not Subject To Specific Jurisdiction In California.

A three-part test governs whether specific jurisdiction exists in the Ninth Circuit:

> (1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo Inc.*, 647 F.3d at 1228-29. Plaintiff "bears the burden of satisfying the first two prongs." *Id.* at 1228. If she does, "the burden then shifts to [defendant] to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

In cases involving allegedly intentional torts, courts apply the three-part "effects" test first espoused in *Calder v. Jones*, 465 U.S. 783, 789 (1984) to determine whether there is purposeful direction or availment. *Sacco v. Mouseflow, Inc.*, No. 220CV02330TLNKJN, 2022 WL 4663361, at *4 (E.D. Cal. Sept. 30, 2022) (applying test to wiretapping causes of action); *Lee*, 2022 WL 993552, at *3 (applying test to invasion of privacy claim and state statutory claims following data breach). Under the *Calder* "effects" test, a defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

7

harm that the defendant knows is likely to be suffered in the forum state." *Lee*, 2022 WL 993552, at *3. In considering whether an act is 'expressly aimed at the forum state' under the effects test, the Supreme Court has made two clarifications to *Calder*: "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore,* 571 U.S. 277, 284 (2014) (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462,475 (1985)). "Second, [a court's] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden,* 571 U.S. at 285. Reliance on "random, fortuitous, or attenuated contacts" or on the 'unilateral activity' of a plaintiff is insufficient. *Id.* at 286 (quoting *Burger King,* 471 U.S at 475).

Operation of a website made available nationwide does not create specific jurisdiction in California without "something more—conduct directly targeting the forum." *Wanat,* 970 F.3d at 1210 (quoting *Mavrix Photo, Inc.,* 647 F.3d at 1229 ("Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed."). The forum state must be "'the *focal point*' of the website 'and of the harm suffered.'" *Wanat,* 970 F.3d at 1212 (quoting *Walden,* 571 U.S. at 287) (emphasis added). There is no "express aiming" where "the harm would have befallen the plaintiff no matter his location." *Sacco,* 2022 WL 4663361, at *5. Contrary to Plaintiff's allegations, her entering into a contract with Greenlight, and Greenlight's inclusion of a California specific privacy statement, do not constitute express aiming for the claims she alleges here. FAC ¶¶ 33, 34; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Voodoo SAS v. SayGames LLC*, No. 19-CV-07480-BLF, 2020 WL 3791657 at *5 (N.D. Cal. July 7, 2020) (reference to California law in privacy policy does not "suggest express aiming at California").

The harm alleged here—"the [alleged] recording of Plaintiff's visit to [the Website] and the collection of [her] personal data"—would have occurred no matter the state Plaintiff

8

3:22-cv-02025-AGS-NLS
DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

was in. *Id.* "Defendant did nothing specifically directed at California or California residents to tether [its Website] to this forum." *Id*; Noto Decl. ¶¶ 3-12. Further, Greenlight's Website cannot provide "something more" to show express aiming towards California. Unlike the *Mavrix* defendant's advertisements that were intentionally directed at California viewers, *see Mavrix*, 647 F.3d at 1229-30, Greenlight's Website—to the extent it is considered an advertisement—is not aimed at California. Noto Decl. ¶ 11. Neither can Greenlight's one-time print advertisement nor its sponsorship of an employee's cricket team—each done in Northern California—establish personal jurisdiction under *Calder* because plaintiff cannot plausibly allege that her claims would not have arisen but-for those limited actions in a part of the state where she does not reside. *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1075 (9th Cir. 2001) ("Plaintiffs must show that they would not have suffered an injury 'but for' Bennett's forum related conduct.").

The case of *Massie v. Gen. Motors Co.,* is instructive on the lack of personal jurisdiction here. 2021 WL 2142728 (2021). In *Massie*, plaintiffs brought a putative class action asserting CIPA and Federal Wiretap Act claims based on defendants' alleged collection of website visitors' "mouse clicks, keystrokes, names, zip codes, phone numbers, email addresses, IP addresses, and locations" with session replay software. *Id.* at *1. Plaintiffs were California residents located in California when they visited GM's "nationally accessible" website. *Id*. As in *Massie*, Greenlight's Website "lack[s] a forum specific focus as the market for [Defendant's products] is nationwide." *Id.* at *5; Noto Decl. ¶ 11. As in *Massie*, Greenlight's use of session replay software to allegedly record website sessions, *see* Noto Decl. ¶¶ 13-15, is not "designed specifically to target and attract Californians" to the Website or its services. *Massie*, 2021 WL 2142728, at *4. The facts showing no personal jurisdiction are even stronger here: unlike GM's collection of "users' location," Greenlight does not  use session replay to "detect IP address or other geolocation information from Website visitors," and thus it cannot be inferred that Greenlight "knew [it was allegedly] wiretapping California customers." *Id*.; Noto Decl. ¶15. But even if Greenlight did collect geographic information with session replay software, "mere foreseeability that someone may

9

be harmed in the forum state does not suffice to confer specific personal jurisdiction." *Massie*, 2021 WL 2142728 at *8 (citing *Walden*, 571 U.S. at 289).

Nor does Greenlight's minimal physical presence within California confer specific jurisdiction. *Lee* is instructive on this point. In *Lee*, plaintiff filed a putative class action asserting invasion-of-privacy and state statutory claims following nonresident defendant Netgain's alleged data breach. This Court dismissed the case for lack of personal jurisdiction because plaintiff's only allegations "specifically related to personal jurisdiction [was] that Netgain 'conducts much of its business in' California." *Lee*, 2022 WL 993552, at *7. Plaintiff makes the same conclusory assertion here. *See* FAC ¶ 29. Both Netgain and Greenlight "only ha[ve] one satellite office in California that is staffed by only a few employees," *Lee*, 2022 WL 993552, at *4, none of whom, in *Lee*, "provided services to" the healthcare organization whose data was breached (*see id*.) or, here, control Greenlight's use of session replay (Noto Decl. ¶ 12). And Greenlight's customer serving instances of server space, like Netgain's storage of data that had allegedly been breached, is not in California. *Id*. ¶ 12; *Lee*, 2022 WL 993552, at *4. Like the "nationwide" security incident in *Lee*, allegations that Greenlight allegedly wiretapped visitors without regard to location on a Website accessible nationwide cannot confer specific jurisdiction in California. Noto Decl. ¶¶ 11, 12; *Lee*, 2022 WL 993552, at *7 n.9. [E]ven "if Plaintiff was a resident of California and suffered harm in California, that fact alone would not be enough for specific jurisdiction." *Lee*, 2022 WL 993552, at *4 n.6 (citing *Patao v. Equifax, Inc.*, No. CV 19-00677 JMS-WRP, 2020 WL 5033561, at *4 (D. Haw. Aug. 25, 2020) (data breach that caused plaintiff to suffer harm in forum is "insufficient to establish specific jurisdiction")).

Plaintiff has alleged only that Greenlight—by operating a website accessible across the United States—conducts business in California. FAC ¶ 29. This conclusory allegation does not confer personal jurisdiction. *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 855 (N.D. Cal. 2022) (registering to do business in California does not confer personal jurisdiction). Plaintiff's claims should be dismissed pursuant to Rule 12(b)(2).

## IV.    VENUE IS IMPROPER

10

3:22-cv-02025-AGS-NLS
DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

**A. Standards For Motions To Dismiss Pursuant To Rule 12(b)(3)**

Venue is only proper in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Plaintiff bears the burden of showing that venue is proper, which she has not done. *Duck Dive LP v. Heydari*, No. 13-cv-1477-BTM (BLM), 2013 WL 5724050, at *2 (S.D. Cal. Oct. 21, 2013).

**B. The Court Should Dismiss Plaintiff's Claims For Improper Venue.**

"[P]roper venue is determined by the judicial district where the defendant resides, not the plaintiff" because "the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Reis,* 2020 WL 7062398, at *4. Because venue "is a privilege of the defendant," "the court should generally focus on activities of the defendant and not the activities of plaintiff" when evaluating venue under § 1391(b)(2). *Kelly v. Echols, M.D.,* No. CIVF05118AWISMS, 2005 WL 2105309, at *12 (E.D. Cal. Aug. 30, 2005). "In determining whether events or omissions are sufficiently substantial to support venue under § 1391[b](2), the court should review the entire sequence of events underlying the claim." *Id.*

Plaintiff's claims against Greenlight arise from Greenlight's alleged collection of Plaintiff's communications on the Website. FAC ¶¶ 38-53. But Greenlight's alleged use of session replay software to record interactions from visitors nationwide on the Website only bears a relation to the Southern District of California because *Plaintiff resides in the District*. FAC ¶ 27. The only "business" that Greenlight has in this district results from Greenlight making its Website accessible nationwide, *i.e.*, in *all* judicial districts. This connection to this District is too attenuated to constitute a substantial part of the claim. *See Bogart, LLC v. Corinthian, Inc.*, No. CV1107665GAFPLAX, 2012 WL 13009154, at *4 (C.D. Cal. May 3, 2012) (venue not proper based solely on the accessibility of the website in the district).

11

Plaintiff does not even allege that she visited the Website in this District. Nevertheless, that would not establish proper venue. "Otherwise, venue almost always would be proper at the place of the plaintiff's residence." *Knuttel v. Omaze, Inc.*, 572 F. Supp. 3d 866, 870 (N.D. Cal. 2021). "At the heart of [Plaintiff's] claims are [Greenlight's] decisions" about the Website and use of session replay software. *Id.* (finding improper venue where all "decision-making concerning Omaze's Website and marketing efforts [was] centralized at Omaze's headquarters in Los Angeles, California"). Plaintiff's visit to the Website—the "single triggering event that ultimately ripened [Plaintiff's claims]—is not enough under 1391(b)(2); instead, venue is proper where the "sequence of events underlying [Plaintiff's] claims" took place, *i.e.*, Atlanta, Georgia. Noto Decl. ¶ 12; *Omaze, Inc.*, 572 F. Supp. 3d at 870. Venue is, therefore, either proper in the Northern District of Georgia, pursuant to § 1391(b)(2) or the District of Delaware pursuant to § 1391(b)(1), but not here.

## V.    PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT

### A. Standards For Motions To Dismiss Pursuant To Rule 12(b)(1)

Plaintiff has not established—and cannot establish—an injury in fact required under Article III. Plaintiff, as "the party seeking to invoke the court's jurisdiction bears burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). "A jurisdictional challenge under to Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). On a facial attack, a court accepts as true only the "well-pleaded factual allegations" of the complaint. *Superama Corp. v. Tokyo Broad. Sys. Television, Inc.*, 830 F. App'x 821, 822 (9th Cir. 2020). On a factual attack, a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

### B. Constitutional Requirements For Standing

To establish "the irreducible constitutional minimum" of standing, plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

12

the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548.

"[A]n injury in law is not an injury in fact." *Ramirez*, 141 S. Ct. at 2205. "Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *Id*. at 2204. So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. But courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*.

In *Ramirez*, the Supreme Court "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 2205. Contending that a statutory violation is "of the type that [gives] rise to standing . . . misses the point of *TransUnion*"—the <u>harm alleged</u> must bear a "'close relationship' to the kind of <u>harm long recognized by American law</u> . . . ." *Ellsworth v. Schneider Nat'l Carriers, Inc.*, No. 5:20-CV-01699-SB-SP, 2021 WL 6102514, at *4-5 (C.D. Cal. Oct. 28, 2021) (quoting *Ramirez*, 141 S. Ct. at 2208-09) (emphasis added); *see Eisenberg v. Bbva United States*, No. 3:20-cv-2368-L-AHG, 2021 WL 5177773, at *2 (S.D. Cal. July 12, 2021) ("a pure procedural violation—on its own—is insufficient").

### C. Plaintiff Has Not Alleged A Concrete Harm

Plaintiff's claims arise from Greenlight's alleged use of FullStory software to allegedly record her unspecified mouse movements and clicks, keystrokes, search items, information inputted into the Website, and pages and content viewed. FAC ¶¶ 9, 40, 43. Other than a mobile phone number, Plaintiff does not allege what she allegedly communicated on the Website, only that the recording occurred without her consent. *Id*. ¶ 40, 51. Plaintiff does not allege that she has suffered *any* harm. She alleges no monetary, physical, or reputational loss. She merely recites the elements of CIPA and concludes that

13

3:22-cv-02025-AGS-NLS
DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

this invaded her privacy. *Id*. ¶¶ 86-87. But under *Ramirez*, simply alleging a CIPA claim is insufficient to satisfy Plaintiff's burden of establishing an Article III injury in fact. *Ramirez*, 141 S. Ct. at 2205; *see Ellsworth*, 2021 WL 6102514, at *5 (FCRA violation did not establish standing because "Plaintiff does not claim that the publication of the allegedly inaccurate information caused him to suffer any harm").

Plaintiff analogizes her claims to a Fourth Amendment violation and common law trespassing, but she does not allege any facts that are akin to those harms. FAC ¶ 87. Both claims are dependent upon a defendant's allegedly unauthorized intrusion into non-public matters or spaces. *See United States v. Borowy*, 595 F.3d 1045, 1048 (9th Cir. 2010) (no reasonable expectation of privacy in computer files made freely accessible and shared to others). Here, on the other hand, Plaintiff concedes that she intended to provide to Greenlight whatever information Greenlight allegedly recorded online, and she cannot reasonably maintain that she expected it to be private vis-à-vis Greenlight. *See People v. Nakai*, 183 Cal. App. 4th 499, 418 (2010) (party could not reasonably believe that online communications were confidential because "[c]omputers that are connected to the internet are capable of instantaneously sending writings and photographs to thousands of people."). "[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-744 (1979).

Greenlight's alleged recording of categories of information with no identified contents (mouse clicks, keystrokes, pages viewed, search terms, words typed, mobile number) that Plaintiff voluntarily provided does not give rise to Article III standing. FAC ¶ 41; *see I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (unauthorized disclosure of plaintiff's "basic contact information, including one's email address, *phone number*, or Facebook or Zynga username" not sufficient to confer Article III standing; the information is not "private" and it was "designed to be exchanged to facilitate communication and is thus available through ordinary inquiry and observation"); *Rahman v. Marriott Int'l, Inc.*, No. 8:20-cv-00654, 2021 WL 346421, at *1-2 (C.D. Cal. Jan. 12, 2021) (unauthorized disclosure of names, addresses, phone numbers, email addresses,

14

3:22-cv-02025-AGS-NLS
DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

genders, birth dates, and loyalty numbers "lack[ed] the degree of sensitivity required" for standing). Plaintiff's claim that Greenlight violated her "protected rights to privacy, in violation of CIPA," FAC ¶ 86, is precisely the sort of bare procedural violation "divorced from any concrete harm" insufficient to establish standing under *Ramirez*. *Id*. at 2213.

### D. Plaintiff Cannot Establish A Concrete Harm.

Plaintiff cannot suffer an injury in fact for conduct she consented to. Plaintiff assented to Greenlight's collection of her "information automatically" "[w]hen she use[d], visit[ed], or otherwise interact[ed] with [the Website]": including by Greenlight and its "third-party service providers" who "may use technology that stores or collects information sent to us by your computer, browser, mobile phone, or other device [including] . . . your activities within [the Website], [and] the portions of the Website and Greenlight App you access; your email address and mobile phone number; and other information." Noto Decl ¶ 23, Ex. 2 (emphasis added).[3] Even before Plaintiff enrolled, she was provided express notice of Greenlight's privacy practices and its use of tools to collect website interactions by the prominent disclosure at the  center of its homepage. Noto Decl. ¶ 16; RJN, Ex. 4.

Greenlight did not use session replay software to acquire any information that Plaintiff may have input into forms in the enrollment process prior to her agreement to the Privacy Statement. Noto Decl. ¶ 14. Her allegation that Greenlight could have recorded "sensitive personal information" such as "passwords and credit card numbers" that could potentially cause her harm is also untrue, because Greenlight did not use session replay to record that information. FAC ¶ 20; *see* Noto Decl. ¶ 14.

Courts have held that agreement to disclosures like those in Greenlight's Privacy Statement are sufficient to show consent to the recording of communications online. *See, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) (consent established for wiretap claims where terms disclosed that "[w]e collect information when you visit or use third-party websites and apps that use our Services . . . . This includes information about

---

[3]    The Privacy Statement is an enforceable clickwrap agreement. *E.g.*, *Dohrmann v. Intuit, Inc.*, 823 Fed. Appx. 482, 484 (9th Cir. Aug. 11, 2020).

the websites and apps you visit [and] your use of our Services on those websites and apps");
*Silver v. Stripe Inc.*, No. 20-CV-08196, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing CIPA claims based on consent where privacy policy disclosed that "[w]e, our partners, our advertisers, and third-party advertising networks use various technologies to collect information, including but not limited to cookies" "to collect information about your online activity"); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-37 (N.D. Cal. 2015) (dismissing wiretap claim where privacy policy disclosed "we may share your personal information with our agents, representatives, contractors and services providers").

Courts regularly grant motions to dismiss for lack of Article III standing where, as here, a plaintiff consented to the conduct she complains of. *Larroque*, 2016 WL 4577257, at *5 (dismissing FCRA claims for lack of standing where "[plaintiff] expressly consented in writing to the release of a credit report and/or investigative consumer report concerning me by a credit reporting agency [Defendant]' and authorized Pacific's use of her reports"); *see St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500 (8th Cir. 2018) (no standing for violations of the TCPA where plaintiff conceded he gave consent by requesting that defendant transmit the facsimiles at issue).[4]

Because Plaintiff consented to Greenlight's and its "third-party service providers" collection of her Website interactions, her claims should be dismissed for lack of standing.

## VI.    PLAINTIFF HAS NOT STATED A PLAUSIBLE CLAIM

### A. Standards For Motions To Dismiss Pursuant To Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

[4]    *See also Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12 (2d Cir. 2017) (no injury-in-fact from defendant's alleged creation of a face scan in violation of the Illinois Biometric Information Privacy Act, where the plaintiff was required to click assent to terms and conditions disclosing that the plaintiff's face would be scanned prior to playing video game); *Winner v. Kohl's Dep't Stores, Inc.*, No. CV 16-1541, 2017 WL 3535038, at *6 (E.D. Pa. 2017) ("Plaintiff[s] expressly consented to receive Defendant's autodialed calls to action telemarketing texts" "Because they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact").

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While factual allegations are assumed true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

### B. Plaintiff Does Not Plausibly Allege An "Interception."

CIPA only prohibits the unauthorized acquisition of a communication while it is "in transit . . . or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a); *see also Rosenow*, 2020 WL 1984062, at *7 ("The Wiretap Act makes it unlawful to 'intentionally intercept[ ] . . . any wire, oral, or electronic communication'").[5]

Plaintiff takes issue with the requirement of an "interception" under CIPA, claiming that any communication "being sent from and received at a place within this state" is subject to the statute. FAC ¶ 82. Her quote takes the statutory text grossly out of context. Plaintiff omits the preceding clause that expressly limits § 631 to the acquisition of a communication "*while* the same is in transit or . . . . being sent from, or received" within California. Cal. Penal Code § 631(a) (emphasis added).[6] To construe CIPA as applying to *any* communication sent from or received within California would make the statute unlimited in scope. Moreover, Plaintiff's reading would contravene *Rogers* where the California Court of Appeals held that it is not unlawful for a party to share a recording of a communication that occurred within the state. *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898 (1975). Under Plaintiff's faulty reading of § 631, *Rogers* is wrongly decided, because the communication shared with third-parties was "received at a place within the state." FAC ¶

---

[5]     The terms "intercept" under the Federal Wiretap Act, 18 U.S.C. § 2510(4), and "in transit" under CIPA, Cal. Penal Code § 631(a), are interpreted coextensively. *Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017).

[6]     *Ribas*, which Plaintiff cites for the proposition that an interception is not required, involved a third-party actively listening to an ongoing conversation, which can hardly be disputed is within § 631's prohibition against acquisition while the communication is being sent or received. *Ribas v. Clark*, 696 P.2d 637, 640 (Cal. 1985).

82; *but see Ribas*, 696 P.2d at 640 (stating *Rogers* was "correctly" decided).

Plaintiff proffers two theories of "interception," neither of which are sufficient under *Iqbal* and *Twombly*. First, Plaintiff uses conclusory terms to allege that Greenlight supposedly intercepted her communications in "real-time," "contemporaneously," and/or "tapped" them. FAC ¶¶ 11, 18, 49, 63. But just "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [Greenlight] is intercepting [Plaintiff's] data in transit," which Plaintiff does not allege. *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022).

Second, Plaintiff includes a lengthy paragraph lifted from *Popa v. Harriet Carter Gifts, Inc.*, 52 F. 4th 121 (3d Cir. 2022) ostensibly as a technical explanation for how Greenlight's session replay software supplied by FullStory worked. FAC ¶ 52. But *Popa* involved a *different* session replay provider (Navistone), a *different* website, and was a ruling at summary judgment, after a full factual record had been developed regarding the operation of Navistone's software—not FullStory's. *Popa*, 52 F.4th at 125. Further, the question of whether an "interception" occurred was not before the court. *See generally Popa*, 52 F.4th 121. Cutting-and-pasting factual findings from a different case involving different parties and a different session replay provider is not a substitute for Plaintiff's duty to plead sufficient true facts to state a plausible claim. But even putting Plaintiff's copy job aside, paragraph 52 does not allege a plausible interception. All that Plaintiff alleges is that FullStory's code "told Plaintiff's browser to begin sending information to FullStory as Plaintiff navigated through Defendant's website." FAC ¶ 25. This conclusory assertion does not establish a plausible interception. *See Rosenow*, 2020 WL 1984062, at *7 (allegation that Yahoo used an "algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" conclusory and failed to state a claim); *Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066 at *4 (N.D. Cal. 2018) ("vague references" to the use of "surveillance systems" and "surveillance personnel" that did not "allege with particularity how or when defendant became aware of his communications" failed to state a CIPA claim).

18

3:22-cv-02025-AGS-NLS
DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

### C. Plaintiff Has Not Alleged That Greenlight Acquired Any Contents.

CIPA only prohibits the unlawful interception of the "contents" of a communication, which Plaintiff does not allege Greenlight acquired here. *Brodsky*, 445 F. Supp. 3d at 127. "[C]ontents" are "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8); *Graham*, 533 F. Supp. 3d at 833 ("The 'contents' of a communication under CIPA and the federal Wiretap Act are the same."). Contents are distinguished from "non-content" or "record information," like "extrinsic information used to route a communication," that is not actionable if collected. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015); *In re Zynga Priv. Litig.*, 750 F.3d at 1108.

Plaintiff alleges that Greenlight acquired her "pages and content [] viewed,. . . scroll movements, words and text typed even if not fully entered, copy and paste actions, search terms even if not fully entered, mouse clicks and movements, keystrokes, mobile numbers entered," and a boilerplate "all other information related to" her visit." FAC ¶ 41. Courts have rejected these data elements as non-substantive information that is not actionable under CIPA. "Mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff [are] precisely the type of . . . information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs." *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17, 2021) (collecting authorities); *see In re Zynga*, 750 F.3d at 1107 ("location of a webpage a user is viewing on the internet" and "name, address, and subscriber number" not "contents"); *see also, e.g.*, *Graham*, 533 F. Supp. 3d at 833 (names, addresses, customer identities, are not "contents"). Plaintiff does not allege that Greenlight acquired her "contents." Her claims should be dismissed.

### D. § 631(a) Does Not Apply To Greenlight Recording Its Own Conversations.

CIPA § 631(a) does not prohibit a party to a communication from recording it. "Section 631 was aimed at *one aspect* of the privacy problem—eavesdropping, or the secret monitoring of conversations by *third parties*." *Ribas*, 696 P.2d at 640 (emphasis

added) (citing *Rogers*, 52 Cal. App. 3d at 899). "*Only* a *third party* can listen to a conversation secretly . . . . By contrast, a party to a communication can record it (and is not eavesdropping when it does)." *Graham*, 533 F. Supp. 3d at 831 (emphasis added); *see also*, *e.g.*, *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979) (Section 631 "has been held to apply only to eavesdropping by a third party and *not to recording by a participant to a conversation*." (emphasis added)).

Plaintiff alleges that Greenlight (i) embeds code provided by FullStory on the Website; and (ii) uses that code to record Plaintiff's interactions on the site. *E.g.*, FAC ¶ 70 ("Defendant's spyware recorded Plaintiff's and Class Members' communications"); *id.* ¶¶ 7, 40-44. These allegations do not state a claim because Greenlight was a party to these communications. In *Rogers*, the California Court of Appeal held that a city employee could not be liable under § 631(a) for installing a "tape recorder jack" on his phone so he could record conversations and "relay part of these conversations" to others, because § 631(a) does not prohibit "the recording of a conversation made by a participant rather than a third party." 52 Cal. App. 3d at 896, 897, 898. As in *Rogers*, Greenlight's use of a tool to record its communications with Plaintiff does not violate CIPA.

Plaintiff contends that FullStory's software is not a tool used by Greenlight but an unlawful eavesdropper because FullStory allegedly "used Plaintiff's communications for its own commercial benefit." FAC ¶ 74. This allegation appears to be based on a line of cases that have followed *Revitch v. New Moosejaw, LLC*, Case No. 18-cv-06827, 2019 WL 5485300 (N.D. Cal. Oct. 23, 2019) and recognized an aiding-and-abetting theory for liability under CIPA § 631. The theory has several flaws. First, even the *Revitch* court recognized that aiding-and-abetting liability is not generally accepted under § 631. *See Revitch*, 2019 WL 5485330, at *2 n.2 (citing *Powell v. Union Pacific Railroad Co.*, 864 F. Supp. 2d 949, 954 (E.D. Cal. 2012) (rejecting argument that "a participant should be liable [under 631] for aiding or conspiring with a third party to enable that party to listen in")).

Second, the facts of this case are starkly different from those where courts have held that an entity providing software used on a website could be an unlawful eavesdropper. For

20

example, in *Revitch*, "Navistone was a marketing company that partnered with e-commerce sites to intercept visitor data and create marketing databases of consumer information." *Graham*, 533 F. Supp. 3d at 832 (citing *Revitch*, 2019 WL 5485330, at *1). In *In re Facebook, Inc., Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), Facebook tracked its users on third-party websites *after* they had logged out of Facebook on all of their devices, and allegedly sold the data it gathered to advertisers. *Id.* at 596, 607-08. "Navistone and Facebook were independent parties who mined information from other websites and sold it . . . ." *Graham*, 533 F. Supp. 3d at 832.

Here, by contrast, all that Plaintiff alleges is that FullStory either used, or "had the capability to use" her data "for its own gain," citing FullStory's Terms and Conditions. FAC ¶¶ 74-75. Courts have held that precisely that kind of conclusory allegation is insufficient to show that a software provider is an eavesdropper under CIPA, as opposed to a tool lawfully used by the website operator to record its own communications. *Licea v. Cinmar, LLC*, CV 22-6454-MWF (JEM), 2023 WL 2415592, at *8 (C.D. Cal. Mar. 7, 2023) (allegations that software provider "intercepted and eavesdropped on [] communications in real time in order to harvest data from those conversations for financial gain" did not plausibly establish that software provider eavesdropped as opposed to providing a tool for the website operator). Moreover, FullStory's Terms and Conditions—quoted by Plaintiff—state that its "license to access and use Customer data" is for the purpose of providing and improving "<u>Services to Customer</u>," with "Services" defined as only the "content, features, functionality, tools, data, software applications and APIs . . .<u>that are ordered by Customer</u>." FAC ¶ 74; RJN, Ex. 6 at ¶ 1.4. In other words, by Plaintiff's own allegations FullStory uses Greenlight data to provide and improve its services to Greenlight. "The pleadings, taken as true at this stage, nowhere suggest that [FullStory] has the ability to use the information independently." *Licea*, 2023 WL 2415592, at *9.

Plaintiff also seems to argue that it does not matter whether FullStory used Greenlight's data or not—its mere presence is sufficient to impose liability on Greenlight. *See* FAC ¶¶ 76-77. But that argument would require the Court to disregard *Rogers*, which,

21

as the California Supreme Court recognized "correctly" held that § 631 "does not penalize the secret recording of a conversation by one of the participants" with a tape recorder. *Ribas*, 696 P.2d at 640 n.3. Plaintiff does not allege any facts that suggest Greenlight used FullStory for anything other than to record its own data, which is not actionable.

### E. The First Clause of § 631(a) Does Not Apply To Internet Communications.

Plaintiff cannot maintain a claim under the first clause of § 631(a) because it only imposes liability where a party "intentionally taps, or makes any unauthorized connection . . . with any *telegraph or telephone* wire, line, cable, or instrument . . . ." Cal. Penal Code § 631(a) (emphasis added). "Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet," as Plaintiff alleges here. *Licea*, 2023 WL 2415592, at *5 (collecting authorities); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825-26 (N.D. Cal. 2020); *see Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135–36 (E.D. Cal. 2021).

### F. § 632.7 Only Applies To Communications Between Two Telephones

Plaintiff's § 632.7 claim should be dismissed because the plain text of the statute establishes that it only applies to communications between <u>two</u> <u>telephones</u>, not between a smartphone and a server supporting a website. *See* FAC ¶ 119. § 632.7 provides:

> (a) Every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication *transmitted between two cellular radio telephones*, a *cellular radio telephone and a landline telephone*, *two cordless telephones*, a *cordless telephone and a landline telephone*, or a *cordless telephone and a cellular radio telephone*, shall be punished by a fine . . . .

Cal. Penal Code § 632.7(a) (emphasis added). "[S]ection 632.7 responded to concerns that existing law did not prohibit the recordation of communications involving a *cellular or cordless telephone*," as there was "no prohibition against recording a conversation transmitted *between* cellular or cordless phones," but it was "illegal to intercept or record

a conversation *between* traditional telephones." *Smith v. LoanMe, Inc.*, 11 Cal.5th 183, 196 (2021) (quoting legislative record). "These concerns apparently owed to a sense that communications involving cellular or cordless telephones might represent 'radio' communications that [S]ection 632 expressly excludes from its purview. . . ." *Id.*

Any argument that § 632.7 should be expanded to communications between devices that are not telephones should be rejected, and has been rejected. *Hot Topic, Inc.*, 2023 WL 2026994 ("Plaintiff provides no valid authority or explanation why the Court should adopt a construction of the statute so fundamentally at war with its text other than it would allow her to possibly state a claim for relief" based on use of chat feature on website); *Licea*, 2023 WL 2415592 (rejecting argument that smart phone visiting a website is subject to § 632.7).[7]

The Court should apply CIPA by its express terms, which the Legislature carefully and specifically drafted in § 632.7 to only protect communications between two telephones. *Smith*, 11 Cal. 5th at 196. Here, Plaintiff alleges that she used "cell phones and other mobile devices" to visit Greenlight's Website. FAC ¶ 38. Courts have rejected the proposition that a smartphone, especially when used for its Internet browser function, is a telephone under CIPA. *Mastel*, 549 F. Supp. 3d 1129, 1135–36 ("Although iPhones contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers. . . . While Pasteboard may enable an iPhone user to

---

[7] The Legislature has regularly amended CIPA since Internet usage became widespread in the 1990s, but it has not altered § 632.7's scope. *See, e.g.,* Cal. Pen. Code §§ 631 (amended 2022, eff. Jan. 1, 2023), 632 (amended 2016), 633 (amended 2018), 633.02 (added 2015), 633.05 (added 2011), 633.5 (amended 2017), 633.6 (same), 633.8 (amended 2011), 636 (same), 637 (same), 637.2 (amended 2016), 638 (added 2006), 638.53 (added 2015), 638.54 (added 2016), 638.55 (same). The Legislature enacted an amendment to Section 632.7 that took effect on January 1, 2023, but did not add internet or website communications to its scope. 2022 Cal. Legis. Serv. Ch. 27 (S.B. 1272). Principles of statutory interpretation hold that "failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes made in other respects, is indicative of an intention to leave the law unchanged in that respect." *People v. Black*, 32 Cal. 3d 1, 9 (1982).

1  paste a phone number into the phone application, labeling it a 'telephone instrument' for

2  this reason would be analogous to calling a pen and paper 'telephone instruments' because

3  they allow a caller to write down a phone number before dialing."). Even assuming that

4  Plaintiff's smartphone when used to access the Internet is a telephone within the meaning

5  of § 632.7, the server with which Plaintiff communicated that supported the Website is *not*.

6  Because Plaintiff has not alleged a communication between <u>two</u> telephones, § 632.7 does

7  not apply and her claim should be dismissed.

8  **G. Plaintiff's Consent Bars Her Claims**

9  Plaintiff's consent to Greenlight's recording of her Website activity is judicially-

10  noticeable and supports dismissal under Rule 12(b)(6). "Courts consistently hold that terms

11  of service and privacy policies . . . can establish consent to the alleged conduct challenged

12  under various states' wiretapping statutes and related claims." *Silver*, 2021 WL 3191752,

13  at *4; *see Smith*, 745 F. App'x, 8; *Garcia*, 78 F. Supp. 3d at 1135-37.

14  The Website, which is subject to judicial notice, is almost entirely informative and

15  passive in nature. RJN, Ex. 4. From the moment a visitor accesses the Website, the visitor

16  is presented with the prominent disclosure in the middle of the home page directing the

17  visitor to "[l]earn how we collect and use your information by visiting our <u>Privacy</u>

18  <u>Statement</u>," with a link to the Privacy Statement embedded in the disclosure *Id*., Ex. 2. If

19  a visitor elects to create an account, the visitor expressly assents to the Privacy Statement

20  by clicking "Next" in the enrollment process immediately above a disclosure that informs

21  the user "By clicking Next, you are accepting Greenlight's <u>Terms of Service</u> & <u>Privacy</u>

22  <u>Statement</u>." RJN, Ex. 5. The Privacy Statement discloses that Greenlight automatically

23  collects on the Website "communications with [Greenlight] and information [users]

24  provide," "clicked pages and any other information" including through the use of "third-

25  party service providers" and their "technology." RJN, Ex. 3 at 2, 4.

26  Consent under CIPA may be express or implied. *In re Google Inc.*, No. 13–MD–

27  02430–LHK, 2013 WL 5423918, at *12-13 (N.D. Cal. Sept. 26, 2013); *Campbell v.*

28  *Facebook Inc.*, 315 F.R.D. 250, 265-266 (N.D. Cal. 2016). Here, both are present. First,

24

Plaintiff had notice and opportunity to review the Privacy Statement immediately upon accessing the Website, which constitutes implied consent to Greenlight's and its service providers' collection of her interactions. "The critical question is whether the party whose communications were intercepted had adequate notice of the interception." *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016). Greenlight's disclosure is similar to a stating that a "call may be recorded" upon first visiting the Website. *Id.* ("In the typical implied in fact consent scenario, a party is informed that his call will be recorded, and he continues to use the communication system after receiving notice the communications are being intercepted"); *Jacome*, 2021 WL 3087860, at *7 (website disclosure "that explicitly warned [users] that 'by continuing to use [the] [W]ebsite, [Plaintiff] acknowledge[s] the use of cookies'" equivalent to "calling a customer service line and hearing 'Your call is being recorded for quality assurance purposes.'"); *In re Google Inc.*, 2013 WL 5423918, at *12-13 (consent implied where party has "adequate notice of the interception").

Second, if Plaintiff enrolled in Greenlight's services (which she did, and the Court may properly consider under Rule 12(b)(1)), she expressly consented to Greenlight's collection of her communications. RJN, Ex. 5. This case is unlike *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) where the plaintiff completed a multi-page questionnaire before agreeing to the website operator's privacy policy. *Id.* at *1. Here, the only information that Plaintiff could provide before she agreed to Greenlight's Privacy Statement was non-actionable non-content information under controlling law. *See supra* § VI(C). While Plaintiff quibbles that Greenlight's Privacy Statement was not express enough, courts have upheld substantially similar terms in finding consent under CIPA. *See supra* § V(D). Her consent is dispositive of her claims.

## VII.    CONCLUSION

Greenlight respectfully requests that the Court dismiss the FAC with prejudice.

DATED: April 4, 2023                         GREENBERG TRAURIG, LLP

1

By ___/s/ Rebekah S. Guyon_____

2    Rebekah S. Guyon
    1840 Century Park East, Suite 1900
3    Los Angeles, CA 90067
    Telephone: (310) 586-7700
4    Facsimile: (310) 586-7800
    GuyonR@gtlaw.com
5

6    *Attorneys for Defendant*
    *Greenlight Financial Technology, Inc.*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:22-cv-02025-AGS-NLS
DEFENDANT GREENLIGHT FINANCIAL TECHNOLOGY, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT